MOYSES v. SPARTAN ASPHALT PAVING COMPANY.

SPARTAN ASPHALT PAVING COMPANY v.
RUSS ZUKER TIRE SERVICE, INC.

1. Pleading — Affirmative Defense — Negligence — Contributory Negligence.

   The affirmative defense of contributory negligence is not in issue where it is not presented in any pleading (GCR 1963, 111.7).

2. Motions—Impleader—Discretion.

   Grant or denial of a motion to implead a third-party defendant depends not upon substance but upon judicial discretion (GCR 1963, 204.1).

3. Motions—Impleader—Joint Tortfeasors—Jurisdiction.

   A trial judge's denial of a primary defendant's motion to implead two corporations was proper, where the motion and proffered third-party complaint failed to show or plead that

----

References for Points in Headnotes
[1] 41 Am Jur, Pleading § 155.
[2, 3, 5, 12] 39 Am Jur, Parties § 85.
[4, 7, 9] 18 Am Jur 2d, Contributions §§ 41, 42.
[6] 20 Am Jur 2d, Courts § 69.
[8] 52 Am Jur, Torts § 110.
[10, 11, 16] 52 Am Jur, Torts §§ 110–112.
[13] 39 Am Jur, Parties §§ 87, 88.
[14] 41 Am Jur, Pleading § 7.
[15] 39 Am Jur, Parties §§ 89, 90, 91.
[17] 18 Am Jur 2d, Contributions § 43.
[18] 39 Am Jur, Parties § 85.

the parties sought to be impleaded could be joint tortfeasors with the primary defendant, as provided by statute, or that the third-party process issued by the circuit court, when and if served upon an alien corporation sought to be impleaded, would confer jurisdiction on the court to proceed against that corporation (MCLA § 600.2925).

4. CONTRIBUTION — INDEMNITY — THIRD-PARTY PRACTICE — IM-PLEADER — MOTIONS.

A third-party complainant preserves his substantive right, if any, to contribution or indemnity from a third-party defendant even though his motion to implead the third-party defendant is denied (MCLA § 600.2925; GCR 1963, 204).

5. MOTIONS — IMPLEADER — THIRD-PARTY PRACTICE — DISCRETION.

The trial judge must weigh the advantages of having a third party in the case against the probability of delay, complications of the trial, timeliness of the motion, similarity of the evidence, possibility of prejudice to plaintiff and possibility of prejudice to the third-party defendant in passing on a motion to implead a third party.

6. COURTS—DISCRETION.

Judicial discretion implies the absence of a hard-and-fast rule and means a decision of what is just and proper under the circumstances.

7. TORTS — JOINT TORTFEASORS — THIRD-PARTY PRACTICE — DISCRETION — CONTRIBUTION.

Joint tortfeasors who are summoned into court as third-party defendants by exercise of the court's discretionary power pursuant to court rule may be liable for contribution (MCLA § 600.2925).

8. TORTS—JOINT TORTFEASORS—DUTY—NEGLIGENCE—INJURY.

There are joint tortfeasors where two or more persons owe to another the same duty and by their common neglect of that duty the other is injured.

9. TORTS—JOINT TORTFEASORS—CONTRIBUTION—LIABILITY INSURERS.

Only joint tortfeasors, not severally-liable tortfeasors (except liability insurers), may have contribution under the statute providing for contribution between joint tortfeasors in certain cases (MCLA § 600.2925).

10. TORTS—JOINT TORTFEASORS—DEFINITION.

The term joint tortfeasors does not refer to wrongdoers, the liabilities of whom arise out of variant legal positions which

makes them severally responsible to the plaintiff for damages, nor to acts or omissions of several who act independently rather than in concert, nor to those who may be joined as defendants *by the plaintiff* and held responsible for damages sustained by plaintiff because of defendants causally co-operating in non-joint acts or omissions.

11. Torts—Joint and Several Liability.

Liability, if any, of two proposed third-party defendants, one who allegedly made a defective tire in France and the other who distributed the tire in the United States, is several and not joint with a primary defendant who used the tire and had a blowout with that tire which caused injury to plaintiff.

12. Motions—Impleader—Discretion—Substantive Right.

Discretionary denial of a motion to implead a third-party defendant is not adjudicatory of any existent substantive right of the third-party plaintiff against that defendant (GCR 1963, 204).

13. Parties — Third-Party Practice — Vouching In — Notice of Claim — Opportunity to Defend.

To vouch in a third party, service of process is not required, giving appropriate notice of the pending claim to the third party and tendering to him the opportunity to control the defense being sufficient, and vouching in may be desirable where the third party is beyond the jurisdictional reach of Michigan courts.

14. Pleading—Third-Party Practice—Cause of Action—Negligence.

A third-party complaint by the user of a tire which blew out causing injury to a plaintiff states no cause of action for negligence against the French manufacturer of the tire and the United States distributor, where there is no pleading or briefing on the point that the tire in question was negligently manufactured under French law.

15. Pleading—Impleader—Substantive Right.

A primary defendant who had a blowout with a tire, causing injury to plaintiff, has no *substantive* right to implead the French manufacturer of the tire or the United States distributor of that tire (MCLA § 600.2925; GCR 1963, 204).

16. CONTRIBUTION—TORTS—JOINT    TORTFEASORS—COMMON    LAW—
JOINT OR SEVERAL LIABILITY.
   The common-law bar of contribution between or among tort-
   feasors, already partly abolished by statute, is overruled,
   with the exception of wilful or intentional wrongdoers, and
   there is a right of contribution of all who are jointly or
   severally liable for an injury not intentionally committed.

17. CONTRIBUTION—JOINT    TORTFEASORS—COMMON    LAW—RETROAC-
TIVE APPLICATION.
   Overruling of the common-law bar of contribution among tort-
   feasors applies retroactively so as to include claims for contri-
   bution which arose by the fact of payment by the claimant of
   more than his *pro rata* share, no more than six months before
   the date the Supreme Court overruled.

18. COURTS—ACTION—SPEEDY TRIAL—THIRD-PARTY PRACTICE.
   In actions for property damage, personal injury, wrongful death
   or any combination of these, circuit judges must order
   promptly tried the issues pleaded by the plaintiff against the
   primary defendant when they are ready for trial, and those
   pleaded by the primary defendant against third-party de-
   fendants under the court rule should be tried as one or sep-
   arately as the trial judge may deem advisable (GCR 1963,
   204).

Appeal from Court of Appeals, Division 3, J. H.
Gillis, P. J., and Quinn and Levin, JJ., denying ap-
plication for leave to appeal from an order granted
by Ingham, Jack W. Warren, J. Submitted January
14, 1970. (Calendar No. 10, Docket Nos. 52,323,
52,324.) Decided March 12, 1970.

Separate actions by Gorman Moyses and Doreen
Moyses for negligence against Spartan Asphalt Pav-
ing Company, a Michigan corporation, who as third-
party plaintiff brings action against Russ Zuker
Tire Service, Inc., and Michelin Tire Corporation,
a New York corporation. Principal defendant's mo-
tion to implead Michelin Corporation, a New York
corporation, and Manufacture Francaise Des Pneu-
matiques Michelin, a French corporation, denied.

Application of principal defendant for leave to appeal to the Court of Appeals denied. Principal defendant's application for leave to appeal to the Supreme Court granted. Affirmed.

*Glassen, Parr, Rhead & McLean,* for plaintiffs.

*Foster, Campbell, Lindemer & McGurrin (John L. Collins,* of counsel), for Spartan Asphalt Paving Company.

*Fraser, Trebilcock, Davis & Foster,* for Michelin Tire Corporation.

BLACK, J. These suits, pending now in the Ingham circuit, started out as actions for negligence. Plaintiff Gorman Moyses' suit arose out of a head-on collision of primary defendant Spartan's dump truck with his Willys station wagon.[1] The right of action pleaded by him accrued in 1965. The present appeal being here upon pleadings only, we observe from the face thereof that there can be little question of primary liability of primary defendant Spartan to Mr. Moyses. Certainly there can be no question of contributory negligence, there being no presentment in any pleading of that affirmative defense. See GCR 1963, 111.7.

Primary defendant Spartan's truck, proceeding west on the right side of Lansing's four-lane paved Saginaw street, veered to the left side of the street, where it collided with the station wagon. The collision was caused, according to Mr. Moyses' complaint, by negligence of Spartan and its driver alleged as follows:

"a. That said vehicle was operated upon the highways of this state at a speed in excess of the posted

[1] The other suit, brought by Mrs. Moyses, is derivative.

speed limit and at a speed greater than reasonable and proper having due regard to the traffic, surface and width of the highway and the other conditions of the highway then existing, contrary to the provisions of the statutes of the state of Michigan thereunto pertaining being § 9.2327, Michigan Statutes Annotated.[2]

"b. That said motor vehicle was operated then and there recklessly and carelessly and heedlessly, in willful and wanton disregard of the safety of others, and without caution and due circumspection contrary to § 9.2326 of the Michigan Statutes Annotated,[3] said motor vehicle being driven across the center line of said highway and into the motor vehicle of the plaintiff.

"c. That in violation of the common-law rules of the road, said motor vehicle was being operated at the time and place with defective tires, which tires, among other causes, caused said motor vehicle to go across the center line and into the path of the vehicle of the plaintiff.

"d. That contrary to the provisions of § 9.2405 of Michigan Statutes Annotated,[4] the said motor vehicle of the defendant was operated without brakes adequate to prevent it from colliding with the vehicle of the plaintiff and with brakes insufficient to prevent it from being operated across the center line of the highway when cause arose for the application of brakes to stop said vehicle.

"e. That said motor vehicle of the defendant was operated in a defective mechanical condition causing the front axle of said vehicle to break loose and to cause the motor vehicle of the defendant to come across the highway and into the vehicle of the plaintiff, all contrary to the common-law rules of the road."

---

[2] CLS 1961, § 257.627 as amended by PA 1962, No 120.—REPORTER.

[3] CLS 1961, § 257.626.—REPORTER.

[4] MCLA § 257.705.—REPORTER.

On the other hand, according to Spartan's original and proposed third-party complaints, the collision was caused exclusively by a blowout of the left front tire of its dump truck, a tire Spartan charges was defectively manufactured in France with right of full or contributory recovery over as against the hitherto-summoned third-party defendants plus the two additional third-party defendants Spartan seeks now to implead pursuant to GCR 1963, 204.1. Whatever the cause or causes of the collision, Mr. Moyses has long since been entitled to have his pleaded right tried to judgment. When and if the allegations of his now more than three-year-old complaint arrive at the opportunity of proof at trial, it appears from that complaint that he was very seriously injured with manifest permanent result.

Primary defendant Spartan's first third-party motion, designed as it was to implead present third-party defendants Russ Zuker Tire Service, Inc., and Michelin Tire Corporation was granted. Then, among other pleadings, depositions, interrogatories, motions, etc., came these additionally potent paralyzers of otherwise promptly administrable justice.

The filing of third-party defendant Russ Zuker's answer to complaint and its cross-claim against third-party defendant Michelin Tire Corporation; the filing of an amended third-party complaint by primary defendant Spartan against third-party defendants Russ Zuker and Michelin Tire Corporation; the filing of third-party defendant Michelin Tire Corporation's answer to primary defendant Spartan's amended third-party complaint against it and, finally, the filing by primary defendant Spartan of a motion for leave to implead additional third-party defendants identified as the Michelin Corporation (of New York) and a French corporation identified as Manufacture Francaise Des Pneumatiques

Michelin. With this motion primary defendant Spartan tendered its "Second Amended Third-party Complaint."

The last complaint is the one we are called upon to examine for service under Rule 204. Therein primary defendant Spartan alleges that it bought from third-party defendant Russ Zuker, "one month prior to the accident complained of", a Michelin tire which was then installed on the left front wheel of its dump truck; that the tire was manufactured defectively by the French corporation and distributed by the Michelin Corporation to present third-party defendant Michelin Tire Corporation, and from the latter to present third-party defendant Russ Zuker. This last third-party complaint concludes:

"Wherefore, defendant and third-party plaintiff prays for a judgment against third-party defendants for any and all amounts which plaintiff Gorman E. Moyses may be found entitled to recover against defendant and third-party plaintiff, or in the alternative, a judgment for a pro-rata contribution by third-party defendants to any judgment which plaintiff may recover against this defendant and third-party plaintiff."

Primary defendant Spartan's motion for such additional impleader came to submission and denial in June of 1968. No formal opinion was filed by Judge Warren in circuit. His order denying leave recites and concludes:

"This matter having come before the court on motion of Spartan Asphalt Paving Company, defendant, for leave, as third-party plaintiff, to serve a summons and complaint upon Michelin Corporation (a New York corporation) and Manufacture Francaise Des Pneumatiques Michelin (a French corporation)—said motion being based upon GCR

204 and MSA 27A.2925[5]; the court having reviewed said motion together with the pleadings in opposition thereto and heard oral arguments thereon, from which it appears that this case was commenced December 30, 1966; that this motion was filed March 6, 1968 and argued April 13, 1968; that the motion is based upon a claimed 'blowout' of a tire—a theory not conceded by the other parties; that serious problems of obtaining service may result if the motion is granted; and that delay of trial will likely result if the motion is granted; therefore it is

"Ordered, that the motion to add the parties named be, and the same is, denied."

Application of primary defendant Spartan to the Court of Appeals, for leave to review Judge Warren's order, resulted in an order of denial "for lack of merit in the grounds presented". Judge LEVIN dissented. His one-sentence dissent called attention (without comment) to Professor Hawkins' recent "Practice Commentary" (33 MCLA § 600.2925, p 780) and advocated grant of the requested leave to implead, "the trial judge not having refused to grant leave on the ground of inexcusable delay and such delay not appearing in the record". June 4, 1969, we granted primary defendant Spartan's application for leave to appeal.

*First: The Question of Judicial Discretion.*

Involved here is an upthrust question of construction and application of the second sentence appearing in § 2925 (CLS 1961, § 600.2925; Stat Ann 1962 Rev § 27A.2925):

"Joint tortfeasors who are summoned in as third party defendants pursuant to court rule may likewise be liable for contribution."

By brief and oral argument primary defendant and appellant Spartan insists that it has an *absolute*

---

[5] MCLA § 600.2925.—REPORTER.

*right* to the impleader sought by it as against the Michelin Corporation and the French corporation; that otherwise its alternatively asserted right to contribution as against the two will be lost. For a number of reasons, now to unfold with detail, we do not agree.

In the first place the question of grant or denial of a motion to implead, under Rule 204.1, depends not upon substance but upon judicial discretion; a discretion certainly not abused here. In the second place the trial judge's determination that primary defendant Spartan's motion to implead should be denied was right for two good reasons, that is to say, the motion and proffered third-party complaint fail to show or plead sufficiently:

(a) That the two newly identified corporations are or could be, with primary defendant Spartan, joint tortfeasors within RJA § 2925 (CLS 1961, § 600.2925), and

(b) that third-party process issued by the Ingham county circuit court, when and if served upon the French corporation, would confer jurisdiction on that court to proceed as against that corporation.

We have said that Spartan was not possessed of a right, under § 2925 and Rule 204, to implead the additionally proposed third-party defendants. By no means, however, does that conclusion (and the denial below of its present motion) eliminate Spartan's inchoate right, if any, to contribution or indemnity from the Michelin Corporation or the French corporation, or both. The reason lies in the wholly discretionary power of the trial judge to grant or deny impleader under Rule 204; a power that was dinned into the minds of Michigan judges and lawyers, the Justices of this Court included, when the General Court Rules of 1963 were conferentially discussed during the year which preceded

their adoption, and then through our statewide indoctrination meetings of 1962.[6] Here, impleader having been discretionarily denied, whatever *substantive* right or rights primary defendant Spartan possessed before such denial remain fully intact despite that denial.

Judge Gilmore of the third circuit, who with the writer and others took an active part in the 1962 meetings, carefully maintained and then published an accurate record of the presentations that were made uniformly during those meetings. Here is the essence of that record, pertinent to this posed question of absolute right to implead under Rule 204 (1 Gilmore, Michigan Civil Procedure Before Trial, pp 332, 333):

"Impleader is by motion ex parte before service of the answer, or by motion with notice to plaintiff after the service of an answer. The granting of the motion rests within the sound discretion of the court, and there is no absolute right to join a third party defendant. Generally courts will be liberal in allowing the joinder of third party defendants, but it should be avoided where there might be prejudice to either party because of the complexity of the case. It should be remembered, however, that if there is objection on this basis, the court can always order separate trials of separate issues under GCR 1963, 505.2.

"Joiner [61 Negligence Law Section Bulletin, 8, 12] says:

"In acting upon a motion made under the rule the judge will weigh the advantages of having the third party in the case against the following:

"1. The probability of delay, *United States* v. *Jollimore* (1949), 2 FRD 148

"2. Complications of the trial, *McPherrin* v. *Hartford Fire Ins. Co.* (1940), 1 FRD 88

---

[6] The design of those meetings was that of professionally complete understanding of the Revised Judicature Act of 1961 and the newly adopted General Court Rules.

"3. The timeliness of the motion, *Casey* v. *Calmar Steamship Corporation* (D Del, 1956), 138 F Supp 751

"4. The similarity of evidence, *Jones* v. *Waterman SS Corporation* (CA 3, 1946), 155 F2d 992

"5. The possibility of prejudice to the plaintiff, *FDIC* v. *The National Surety Corp.* (1950), 13 FRD 201; *Casey* v. *Calmar Steamship Corporation, supra.*

"6. Possibility of prejudice to third-party defendant, *American Fidelity and Casualty Company* v. *Greyhound Corporation* (CA 5, 1956), 232 F2d 89."

There can be no intellectually honest question about this point that impleader under Rule 204 is wholly discretionary, and accordingly that an order denying impleader does not destroy whatever *substantive* right to contribution the primary defendant possessed prior to such denial. In such event he may pay up if damnified and then sue within the allowed six-month period under (4) of § 2925. See the "Authors' Comments" headed "Discretion of Court" (1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 507),[7] and the consistently declarant list of "Selected Federal Decisions" the same authors have picked out, pp 518–521 of the same publication, as supporting the intent to provide for invocation of procedural discretion. We proceed:

A substantive right is like the presence or absence of pregnancy. It exists or does not exist, and cannot be made to depend on any good or dismaying turn of judicial discretion. Hence one's right of appeal to judicial discretion differs from his substantive rights in that the former is simply the

[7] "Rule 204 does not give defendant an absolute right to join third-party defendants, even in circumstances where the third-party is or may be liable to the defendant within the wording of the rule. Rather defendant is empowered to ask the court for leave to implead the third party. Whether to allow the impleader is a decision for the sound discretion of the trial court."

"Power or privilege of the court to act unhampered by legal rule." (Black's Law Dictionary [4th ed], p 553, citing Chief Justice Marshall in *Osborn* v. *United States Bank* [1824], 22 US [9 Wheat] 738 [6 L Ed 204]). See particularly Justice Fellows' one-century-later definitional discussion in *Wilson* v. *State Board of Registration in Medicine* (1924), 228 Mich 25, 27, 28, citing and quoting the *Osborn* case and adopting from various authorities (including Webster's then-current edition) explicits such as:

"The term discretion implies the absence of a hard-and-fast rule. The establishment of a clearly defined rule of action would be the end of discretion, and yet discretion should not be a word for arbitrary will or inconsiderate action. 'Discretion means a decision of what is just and proper in the circumstances.' Bouvier's Law Dict. 'Discretion means the liberty or power of acting without other control than one's own judgment.' Webster's Dict."[8]

This Court said unanimously, in *Spalding* v. *Spalding* (1959), 355 Mich 382, 384:

"In view of the frequency with which cases are reaching this Court assailing the exercise of a trial court's discretion as an abuse thereof, we deem it pertinent to make certain observations with respect thereto in the interests of saving expense to the litigants and avoiding delay in reaching final adjudication on the merits. Where, as here, the exercise of discretion turns upon a factual determination made by the trier of the facts, an abuse of discretion involves far more than a difference in judicial opin-

[8] Webster's current (Third New International) edition, published 1961, gives it for our lexicon (p 647):

"*specif*: the latitude of decision within which a court or judge decides questions arising in a particular case not expressly controlled by fixed rules of law according to the circumstances and according to the judgment of the court or judge (as in suspension of a sentence or the amount of a fine)."

ion between the trial and appellate courts. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations."

See *Spalding,* quoted and applied by Division I, in *People* v. *Wolschon* (1966), 2 Mich App 186, 188.

To conclude the question now in discussion: We read for proper application the second sentence of (1) of § 2925 as it was read and understood by this Court in 1961, and then by the profession during the meetings of 1962, that is to say:

"Joint tortfeasors who, upon invocation of the court's discretionary power pursuant to court rule, are summoned in as third party defendants may likewise be liable for contribution."

*Second: Are the Primary Defendant and the Proposed Third-Party Defendants Joint Tortfeasors Within § 2925?*

Section 2925 (CLS 1961, § 600.2925) is a near-*verbatim* redraft of PA 1941, No 303 (CL 1948, § 691.561 *et seq.*). It turned out in the interval that the act of 1941 was considerably short of its supposedly purposeful aim; that of providing the substantive right of contribution between or among jointly liable or severally liable but not wilful tortfeasors. Section 2925 is correspondingly deficient, it having provided the desired right only to the extent of contribution between or among litigant "joint tortfeasors", and that only upon the nod of the plaintiff or of the possibly whimsical circuit judge. Now let us compare these enactments of 1941 and 1961 to ascertain whether, and if so to what extent, the latter improved substantively upon the former.

By § 1 thereof the act of 1941 provided the substantive right of contribution in favor of any *joint tortfeasor who, having been sued by the plain-*

*tiff along with one or more other joint tortfeasors,* had paid the plaintiff more than his *pro rata* share of any judgment the plaintiff had recovered as against the defendants he had sued. Section 2925 (1) provides the identical substantive right, in the same language. It provides additionally, in (1) what has been quoted previously: "Joint tortfeasors who are summoned in as third-party defendants pursuant to court rule may likewise be liable for contribution." (Note the specifically inclusive and exclusive legal phrase, "Joint tortfeasors".)

By § 2 the act of 1941 provided the substantive right of the plaintiff in such a case "to compound, settle with, and discharge  *  *  *  any and everyone or more of said joint tortfeasors," without impairing that plaintiff's right to pursue the remaining joint tortfeasors. Section 2925 (2) provides the same substantive right in the same identical words. (Note again the same phrase, "Joint tortfeasors".)

By § 3 the act of 1941 provided, in favor of an "insurer of a person *jointly or severally liable* with one or more other persons upon a judgment for the same private wrong, which insurer has  *  *  *  discharged the common liability by payment, or has paid more  *  *  *  ", the same "right to contribution which such insured would have acquired by such payment". Section 2925 (3) provides the same substantive right in the same identical words.

Referring to both enactments (of 1941 and 1961), reflect upon the awarded substantive right to contribution in favor of the *insurer* where its insured has been adjudged "jointly *or* severally liable."[9]

---

[9] See authorities cited *post*, headed by *Duncan* v. *Beres* (1968), 15 Mich App 318; particularly *Geib* v. *Slater* (1948), 320 Mich 316, holding that § 2 of the act of 1941 did not save to the plaintiff the right to pursue feasors other than the ones released by him. The reason given by the Court was that the defendant Slater was not, within § 2, a "joint tortfeasor" with the feasors previously released.

Doing so, it becomes apparent that the act of 1961 is no more than a duplicate of the act of 1941, save only for its having been fitted by (1) to third-party practice and, by (4), to the simultaneously effected union of law and equity.

It is not hard to discern that unresolved and wholly unnecessary difficulties remain, in the application of § 2925 in conjunction with Rule 204. And this says nothing of a protrudent constitutional question arising from the provision which distinctively favors (with the substantive right of contribution) the *insurers* of persons "jointly *or* severally liable" who pay more than the just *pro rata* share of their insureds. The question arises, § 2925 having failed to provide in corresponding or equivalent language the same substantive right in favor of a "person" *not* insured, or, say, a "person" who suffers the misfortune of insolvency of his insurer when the time for payment arrives. These abominations we have decided to correct, not by disturbing § 2925 or by resolution of the stated constitutional question, but simply by overruling the remnants of Michigan's common-law rule which — loosely — has barred "wrongdoers" from the equitable right of contribution where, by the standards of equity, that right exists generally.

The legal phrase "joint tortfeasor" was fully understood in Michigan when the act of 1941 was conceived, and again when the Revised Judicature Act was enacted two decades later. In general it was, and still is, that where two (or more) persons owe to another the same duty and by their common neglect of that duty such other is injured, the two (or more) have committed a joint tort and therefore are *joint tortfeasors.* The Legislature both in 1941 and 1961 presumably employed the phrase according to such specific meaning. Why else would

the legislators have employed "joint tortfeasors" four times in the first two divisions of each statute and then, for the purposes of each third division, employ the phrase, "a person jointly *or* severally liable"?

Compare § 2925 with both the 1939 and 1955 drafts of the Uniform Contribution Among Tortfeasors Act (9 ULA pp 233 *et seq.*). Both drafts definitely provide the substantive right of contribution for all who are jointly *or* severally liable for the same injury.

The 1955 draft proceeds pertinently (9 ULA 1967 Cum Supp p 127):

"§ 1. [*Right to Contribution*].—(a) Except as otherwise provided in this act, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

"(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his *pro rata* share of the common liability, and his total recovery is limited to the amount paid by him in excess of his *pro rata* share. No tortfeasor is compelled to make contribution beyond his own *pro rata* share of the entire liability.

"(c) There is no right of contribution in favor of any tortfeasor who has intentionally [wilfully or wantonly] caused or contributed to the injury or wrongful death."

Of the 1955 draft the Commissioners' Prefatory Note advises (9 ULA 1967 Cum Supp p 125):

"This uniform act establishes the right of a person liable for damages for an unintentional wrong to compel others, who are liable with him for the same damages, to share in discharging the common liability."

Presumably the 1939 draft was before the Legislature and its drafting committee when the purposeful phrasing of the 1941 act was written up and enacted. The same must have held true of the 1955 draft when the RJA was written and enacted in 1961. Certainly the Michigan decisions cited *post* must have been at hand, particularly *Geib* v. *Slater,* the then most recent dissector of § 2925's immediate prototype, the act of 1941. From all this it must be assumed that the employment of "joint tortfeasors," appearing as it does four times in § 2925, was both advertent and exclusive of what in (3) of § 2925 was permitted in favor of liability insurers only, that is, contribution arising out of a judgment against persons "jointly *or* severally liable." In veritable sum, "joint tortfeasors" only, not other grades or types of severally liable tortfeasors, may upon third-party discretion of the court have contribution under the second sentence of § 2925(1). This follows, the Court having found it unnecessary to decide, in *Morgan* v. *McDermott* (1969), 382 Mich 333, whether § 2925, with or without permitted impleader, was intended to provide the *substantive* right of contribution between and among joint tortfeasors.

When one speaks specifically of *joint tortfeasors,* he does not refer (a) to wrongdoers the liabilities of whom arise out of variant legal positions, the concurrently applied but legally different derelictions of whom make them *severally* responsible to the plaintiff in damages, or (b) to the acts or omissions of several who act independently rather than in concert, or (c) to those who may—under present rules of court—be joined as defendants, *by the plaintiff* (see GCR 1963, 206), and held responsible to him for damages sustained on account of their causally cooperating but non-joint acts or omissions, say

by the negligence of one, the violation of a statute like the dramshop act by another, and the breach by still another of an express or legally implied warranty. See the exhaustive opinion Judge Levin recently prepared for *Duncan* v. *Beres* (1968), 15 Mich App 318, and the exemplary cases of *Virgilio* v. *Hartfield* (1966), 4 Mich App 582, *Boucher* v. *Thomsen* (1950), 328 Mich 312, *Geib* v. *Slater* (1948), 320 Mich 316 and *Detroit, G. H. & M. R. Co.* v. *Boomer* (1916), 194 Mich 52.

Here the liability if any of the newly proposed third-party defendants (Michelin Corporation and French corporation), as alleged by third-party plaintiff Spartan, is several and not joint, that is to say, primary defendant Spartan, the Michelin Corporation and the French corporation, are not joint tortfeasors in fact or in contemplation of § 2925.

*Third: The Availability to the Primary Defendant of the Right to "Vouch In."*

For the first time since the GCR became effective in 1963, these cases have presented an additional reason for pronouncing the discretionary denial, of a Rule 204 motion for leave to implead, as *not* adjudicatory of any theretofore existent substantive right. Authors Honigman and Hawkins point this up at p 510 of their parent volume aforesaid:

"5. Vouching In

"As mentioned above, the more traditional process of vouching in a third party against whom defendant could have an action is not a satisfactory substitute for modern third-party practice. *But it was not affected by the adoption of Rule 204 and may still have its place.* Tactical considerations will govern the choice of whether to vouch in or implead the third party in a particular case.

"*In circumstances where the third party is outside the jurisdictional reach of Michigan courts, the proc-*

*ess of vouching in may be the only alternative. For
to implead a third-party defendant it is necessary
to serve process upon him, just as any other defend-
ant. Vouching in, however, does not require service
of process, but is satisfied by giving appropriate
notice of the pending claim to the third party and
tendering to him the opportunity to control the de-
fense. This latter factor may also have controlling
tactical importance."*

We agree fully with the italicized portion of the
foregoing comment, the emphasis being ours.

In this case the real target of primary defendant
Spartan's third-party complaint, the French corpo-
ration that is, has not been shown by requisite fac-
tual pleading to be within the admittedly long arm
reach of § 715 (CLS 1961, § 600.715; Stat Ann 1962
Rev § 27A.715).[10]  For aught shown by instant plead-
ings and briefs any third-party summons and com-
plaint, issued and sent forth from Ingham county
for service in France, would inspire just so much
*joie de vivre*—over there.  However, should Spartan
give notice to defend, both to the New York and
French corporations, all of its substantive rights if
any as against those corporations will under the
foregoing italicized comment be fully protected.  For
the practice and its effect, see *Grant* v. *Maslen*
(1908), 151 Mich 466, and *Grand Rapids Lumber
Co.* v. *Blair* (1916), 190 Mich 518.

Turning directly now to the presently scrutinized
third-party complaint: all here agree that Spartan's
alternative "Negligence Count," unlike its "War-

---

[10] For our recent view of this statute, see *Woods* v. *Edgewater
Amusement Park* (1969), 381 Mich 559. For a picture of vain
effort to extend to France reach of process issued in Michigan, see
*Velandra* v. *Regie Nationale Des Usines Renault* (CA 6, 1964), 336
F2d 292 and, generally, Von Mehren and Trautman, *The Law of
Multistate Problems* (Little, Brown & Co., 1965), "a. French Law,"
pp 856 *et seq.*  See also *Velendra* considered in *May* v. *Atlas Mag-
azines, Inc.* (CA 6, 1967), 380 F2d 58.

ranty Count" (the allegations of the two being duplicative), states no cause as against the Michelin Corporation and the French corporation. To explain: without adequate pleading and no briefing to the point, no member of the Court is willing to assay or venture a guess that, under law *a la francaise,* the tire in question was negligently manufactured, distinguished from the possibility that it was falsely warranted for fitness by the French corporation and its United States distributor. We might try that *un de ces jours,* but not now. What is more to the point, perhaps, is that the causes of these plaintiffs have suffered enough from the injustice of delayed justice. They should be ordered up for prompt trial, as now rightfully demanded.

Our ruling is that primary defendant Spartan was never possessed of a *substantive* right to implead as now claimed, under § 2925 and Rule 204.[11] In such regard, it is significant that Spartan's latest third-party complaint sets forth no allegation that it and the newly proposed third-party defendants are or could be adjudged joint tortfeasors, either within § 2925 or by the common law.

*To Recapitulate:*

Stimulated by the national advancement of principles set forth in the Uniform Contribution Among Tortfeasors Act, *supra,* the tendency of other courts to provide by judicial action the right of contribution on behalf of all but intentional wrongdoers, and the compelling admonitions of modern writers like Prosser, we have decided to overrule what is left of Michigan's common-law bar of contribution between or among "wrongdoers," wilful or intentional wrongdoers excepted. Such overrulement will leave the

---

[11] The point not being before us, no like comment is made with respect to Spartan's similar allegations against the present third-party defendants, Russ Zuker and Michelin Tire Corporation.

issue of contribution to equitable principles as known hitherto and now in matters of express or implied contract. In such regard see *Lorimer* v. *Julius Knack Coal Co.* (1929), 246 Mich 214, 217, *Comstock* v. *Potter* (1916), 191 Mich 629, and the exhaustive as well as up-to-date treatise of the law of contribution appearing in 18 Am Jur 2d, Contribution, §§ 1–63, pp 6–95, particularly for the general rules, the prerequisites, the measure and extent of contribution, the apportionment and the application of the law of contribution to particular persons.

Prosser, mentioned above, says (Prosser on Torts [2d ed], § 46, pp 248, 249):

"There is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or his collusion with the other wrongdoer, while the latter goes scot free. Half a century of vigorous denunciation has had its effect in the passage of statutes in some twenty states, which to a greater or less extent permit contribution among tortfeasors. Some of these acts are limited to contribution between defendants against whom a joint judgment has been rendered. Others are quite broad and general in scope, declaring the principle of contribution and leaving its administration to the courts. Still others provide methods by which the tortfeasor from whom contribution is sought may be joined as a defendant, and his liability determined in the original action. The drafting problem has not been free from difficulty.

"It seems quite clear that the rule denying contribution in favor of negligent tortfeasors is in full retreat, and that in due course of time the pressure of opinion will compel its abolition. As to wilful

wrongdoers, or those who are guilty of the more flagrant forms of misconduct, there is no indication of any desire or tendency to relax the original rule."

To the same point is the Commissioners' Prefatory Note, accompanying initiation of the 1939 draft of the Uniform Contribution Among Tortfeasors Act (9 ULA at p 231):

"As an original proposition, all might agree that courts should not lend their aid to rascals in adjusting differences among them. But all tortfeasors are not rascals, in spite of the literal translation of the term as wrongdoers. Most joint and several tort liability results from inadvertently caused damage, although it is almost impossible to draw a practical line between torts of inadvertence and others. It is, then, somewhat ironic to note that at common law contribution is denied among all tortfeasors and is allowed as a matter of course to one who has deliberately chosen to violate a contractual obligation undertaken with others."

Our decision to overrule will apply retroactively so as to include such claims for contribution as may have arisen no more than six months prior to the date of release of this opinion, by the fact of payment by the claimant of more than his *pro rata* share. That will fit the lifting of the common-law bar to the six-month limitation provided when (4) of § 2925 is applicable.

Affirmed. On remand the circuit judge will order promptly tried, either separately or as one, the issues pleaded by the plaintiffs against the primary defendant and those pleaded by the primary defendant against the present third-party defendants. See GCR 1963, 204.1(4) and 505.2.

All circuit judges will proceed correspondingly in actions for property damage, personal injury, wrong-

ful death, or any combination thereof when, by proper and sufficient pleadings and completed pretrial proceedings, the plaintiff's (or plaintiffs') action against the primary defendant or defendants is ready for trial. Other issues pleaded in the action pursuant to GCR 1963, 204 should be tried as one or separately, as the trial judge may deem advisable.

Appellees will have costs of this appeal.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, and T. G. KAVANAGH, JJ., concurred with BLACK, J.

T. M. KAVANAGH and ADAMS, JJ., concurred in result.