**DOLINKA VANNOORD AND COMPANY, a partnership; Marvin Dolinka, Kenneth Van Noord; Gerald Vanderlugt and Bruce Jelsema, its partners, Plaintiffs,**

v.

**OPPENHEIMER AND COMPANY, INC., Defendant.**

No. 1:94–CV–710.

United States District Court, W.D. Michigan, Southern Division.

June 16, 1995.

Grant J. Gruel, Gruel, Mills, Nims & Pylman, Grand Rapids, MI, for plaintiffs.

Bradley J. Schram, Hertz, Schram & Saretsky, P.C., Bloomfield Hills, MI, for defendant.

## OPINION

HILLMAN, Senior District Judge.

In this diversity action the certified public accounting firm of Dolinka VanNoord & Co. and its partners, as plaintiffs, have brought a claim for contribution against defendant Oppenheimer & Co. ("Oppenheimer"), a securities brokerage firm. The claim arises from a judgment entered by this court against plain-

tiffs' predecessor, Dolinka Smith & Van-Noord ("DSV"), on a securities fraud claim filed by a pension plan and its trustees against both DSV and Oppenheimer. Presently before the court is defendant Oppenheimer's motion to dismiss or, in the alternative, for summary judgment on plaintiffs' contribution claim, and for sanctions. For the following reasons, I grant partial summary judgment in favor of Oppenheimer, dismiss the remainder of plaintiffs' complaint, and deny Oppenheimer's accompanying request for sanctions.

## I.

Plaintiffs seek contribution on a judgment of $539,012, which this court entered on December 1, 1993, against plaintiffs' predecessor, DSV, a CPA investment advisory firm located in Grand Rapids, Michigan. The judgment was entered against DSV on a securities fraud claim filed by George Cares, Paul Cares and Louis Cares ("the Careses") and their privately-held corporation's retirement plans, the Sheldon Co. Profit Sharing Plan and Trust and the Sheldon Company Defined Benefit Plan and Trust ("the Sheldon Plans").

The Sheldon Plans permitted the Careses, as trustees of the plans, to designate an investment advisor. The Careses elected to delegate their investment responsibilities to DSV. In the summer of 1985, Michael Smith, an associate and later a partner in DSV, opened two brokerage accounts on behalf of the Sheldon Plans, one of which was with the Chicago, Illinois, branch of Oppenheimer. Sheldon Altman was the Oppenheimer account representative.

In the summer of 1991, investigations revealed that Smith had embezzled money from a number of DSV clients, including the Sheldon Plans, although not from the Plans' Oppenheimer account. Following disclosure of his illegal dealings, Smith pled guilty in Michigan state court to at least one of the many crimes with which he was charged.

Subsequently, he was sentenced to a substantial prison term.

Thereafter, the Careses and their Plans sued in this court Smith, DSV, Oppenheimer, Altman and others to recover compensatory and punitive damages. Their complaint alleged that Oppenheimer and Altman unlawfully engaged in "churning, inappropriate investments, and improper margin and option trading and excessive commissions." The complaint also alleged securities violations under section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5.

Oppenheimer and Altman filed a motion for summary judgment on these claims. By opinion and order issued on July 2, 1993, I granted the motion for summary judgment, and dismissed Oppenheimer and Altman from the case. *Sheldon Co. Profit Sharing Plan and Trust v. Smith,* 828 F.Supp. 1262 (W.D.Mich.1993). However, in the same opinion and order of July 2, 1993, I granted the Careses' and Sheldon Plans' motion for partial summary judgment against DSV, establishing DSV's liability as a partnership, under the Uniform Partnership Act, M.C.L. § 449.1 *et seq,* for the intentional wrongful acts of its ex-partner, Smith. *Id.* On December 1, 1993, after a trial on the issue of damages only, I entered judgment against DSV and its partners, jointly and severally, in the amount of $539,012.

On October 17, 1994, plaintiffs filed this action for contribution against defendant Oppenheimer. This court's jurisdiction over plaintiffs' claim is founded upon the parties' complete diversity of citizenship and the requisite amount in controversy.[1] 28 U.S.C. § 1332. On February 3, 1995, defendant Oppenheimer filed the motion which is presently before the court, seeking dismissal of plaintiffs' claim or, alternatively, summary judgment. Defendant also requested this court to award sanctions, including reasonable attorney fees, pursuant to Fed.R.Civ.P. 11.

---

1. The last sentence of plaintiffs' complaint makes a demand for only "an amount exceeding $10,-000, together with applicable interests, costs and attorney fees." However, taking plaintiffs' complaint as a whole and considering the size of the judgment for which plaintiffs seek contribution, this court finds there to be the requisite amount in controversy for the exercise of its jurisdiction, as previously noted in this court's Case Management Order of March 9, 1995.

## II.

Defendant Oppenheimer seeks dismissal of plaintiffs' complaint under Fed.R.Civ.P. 12(b)(6), or, alternatively, summary judgment under Fed.R.Civ.P. 56(c). Because I find both rules necessary for proper disposition of defendant's motion, I set forth here the standards for granting motions under each.

The standard of review under a Rule 12(b)(6) motion is well-established. "In appraising the sufficiency of the complaint," the Supreme Court wrote in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), "we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The complaint must be construed in the light most favorable to the plaintiff, and its well-pled facts must be accepted as true. *Scheuer v. Rhodes,* 416 U.S. 232, 234, 94 S.Ct. 1683, 1685, 40 L.Ed.2d 90 (1974). Mere legal conclusions and unwarranted factual inferences, however, need not be accepted. *Morgan v. Church's Fried Chicken,* 829 F.2d 10 (6th Cir.1987).

The standard for granting summary judgment is also well-established. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The crux of summary judgment is determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In making this determination, the court must examine the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, drawing all justifiable inferences in favor of the party opposing the motions. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Kramer v. Bachan Aerospace Corp.,* 912 F.2d 151, 153–54 (6th Cir.1990). If the moving party demonstrates there is an absence of evidence supporting the nonmoving party's case, the party opposing the motion must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *Kramer,* 912 F.2d at 153–54. To sustain this burden, the non-moving party cannot rest on the mere allegations of the pleadings. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56(e). Rather, the non-moving party must come forward with specific facts to support its claims and show there is a genuine issue for trial. *Id.*

■ In recent years, the Supreme Court has encouraged the use of summary judgment where appropriate to ensure just, speedy, and efficient determinations in each case. *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2554–55; *Daughenbaugh v. Bethlehem Steel Corp.,* 891 F.2d 1199, 1205 (6th Cir.1989). The Sixth Circuit has recognized that the federal courts have entered a "new era" in summary judgment practice. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478–81 (6th Cir.1989). As a result, mere allegations in support of the non-moving party are inadequate because the "mere existence of a scintilla of evidence in support of the positions will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Cloverdale Equip. Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989).

## III.

While plaintiffs' complaint fails to identify any legal basis for their contribution claim, defendant asserts that plaintiffs' cause of action must arise, if at all, from either the Michigan contribution statute, or the Michigan common law of contribution. I agree. I address the merits of plaintiffs' claim under each theory.

### The Michigan Contribution Statute

■ First, Michigan has created a statutory cause of action for contribution under the

Michigan contribution statute, M.C.L. § 600.2925a. Section 600.2925a(1) provides:

> Except as otherwise provided in this act, when 2 or more persons become jointly or severally liable in tort for the same injury to a person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

However, section 600.2925a(8) provides: "This section does not apply to breaches of trust or of other fiduciary obligations." The judgment for which DSV and its partners seek contribution arises from a breach of fiduciary duties which DSV owed to the Careses and the Sheldon Plans.

Accordingly, by the express terms of the statute, plaintiffs have no right for contribution under M.C.L. § 600.2925a. *See Federal Savings & Loan Ins. Co. v. Quinlan,* 678 F.Supp. 174, 176 (E.D.Mich.1988) ("Thus, it is clear that no *statutory* right to contribution exists where a breach of trust or other fiduciary duty is involved."). To the extent plaintiffs seek relief under the Michigan contribution statute, therefore, plaintiffs' complaint must be dismissed for failure to state a claim.

### The Michigan Common Law Right to Contribution

In their brief in reply to Oppenheimer's motion for summary judgment, plaintiffs concede they have no statutory claim for contribution. Instead they assert they may maintain suit under Michigan common law. In the following section, as a preliminary matter, I consider whether, under current law, there is a common law right to contribution in Michigan, and whether it is available to plaintiffs. I then reach the merits and consider whether defendant should prevail on its motion for dismissal or, alternatively, for summary judgment.

A. *Whether There Is a Common Law Right to Contribution in Michigan, and If So, Whether Plaintiffs Are Barred from Bringing Such a Claim.*

In *Moyses v. Spartan Asphalt Paving Co.,* 383 Mich. 314, 174 N.W.2d 797 (1970), the Michigan Supreme Court expressly created a common law right to contribution among nonintentional tortfeasors, abolishing the former common law bar against such suits. However, the Michigan Court of Appeals has recently stated, well after the *Moyses* decision, that "[t]he right to contribution in Michigan is controlled entirely by statute, since there was no right to contribution at common law." *Reurink Bros. Star Silo, Inc. v. Clinton Cty. Road Comm'rs,* 161 Mich.App. 67, 409 N.W.2d 725, 726 (1987); *Isabella County v. Michigan,* 181 Mich.App. 99, 449 N.W.2d 111, 112–13 (1989).

Neither of the parties discusses this language. However, I believe it calls into question the continuing viability of a common law cause of action for contribution in Michigan. At the time of the *Moyses* decision, the Michigan contribution statute extended only to joint tortfeasors, and "not other grades or types of severally liable tort feasors." *Moyses,* 383 Mich. at 331, 174 N.W.2d 797. The *Moyses* decision created a cause of action for contribution under the common law for the express purpose of extending the right of contribution beyond strictly joint tortfeasors, as provided by the statute then in force. Subsequently, the Michigan Legislature amended the contribution statute to allow contribution among tortfeasors "jointly and severally liable." I must decide whether the current statute abrogates the common law right to contribution, particularly in view of the above-quoted statements from the Michigan Court of Appeals.

Judge Duggan discussed and rejected a similar proposition in *Federal Savings & Loan Insurance Corp. v. Quinlan,* 678 F.Supp. 174 (E.D.Mich.1988). The court reasoned, " 'absent an indication that the legislature intends a statute to supplant common law, the courts should not give it that effect.' " 678 F.Supp. at 176 (*quoting* Singer, Sutherland Stat. Const. § 50.01 at 422 (4th ed.1984). I agree. The revision of the contribution statute did not supplant the common law right to contribution in Michigan. The above-quoted statements from both *Reurink Bros.* and *Isabella County* were made in situations where the parties seeking contribution had settled with the plaintiff in the

underlying action, and were bringing their claims for contribution under M.C.L. § 600.2925a(3), which sets forth special rules for contribution claims in the context of settlements. Moreover, in neither of those decisions did the Court of Appeals provide any discussion of the origins or history of the common law right to contribution in Michigan, nor did it refute its other recent decisions which appear to endorse a common law right to contribution. *See, e.g., United States Fidelity & Guaranty Co. v. Liberty Mutual Ins. Co.,* 127 Mich.App. 365, 372, 339 N.W.2d 185 (1983) (looking to the common law of contribution after determining that neither the former nor the current Michigan statute applied); *Fidelity and Deposit Co. of Maryland v. Newman,* 109 Mich.App. 620, 311 N.W.2d 821, 823 (1981) ("Because [plaintiff] does not have a statutory right to contribution, he must demonstrate a common law right to contribution to avoid summary judgment."). Therefore, I am satisfied a common law right of contribution exists in Michigan.

▮ The next question is whether in this case the common law right of contribution is available to plaintiffs. Michigan common law prevents an intentional tortfeasor from recovering contribution from other tortfeasors. *Johnson v. Bundy,* 129 Mich.App. 393, 342 N.W.2d 567, 570 (1983) ("Contribution is not available to a party who causes injuries or damages by way of an intentional tort."); *Fidelity and Deposit Co. of Maryland,* 311 N.W.2d at 823 ("Under the holding in *Moyses,* Michigan common law does not permit an intentional tortfeasor recovery of contribution from other joint tortfeasors."). Oppenheimer contends that the intentional wrongdoing of Smith, DSV's agent, bars plaintiffs' contribution claim.

▮ Plaintiffs concede that in *Sheldon,* I held DSV liable under Michigan partnership law for the wrongful acts of its former partner, Smith. *Sheldon,* 828 F.Supp. at 1282. However, plaintiffs argue that DSV was only vicariously liable, and that its vicarious liability does not render DSV itself an intentional tortfeasor.

I have been unable to locate any Michigan cases which either clearly support or refute plaintiffs' claim. However, I have found one recent case from Minnesota analyzing this question. *Oelschlager v. Magnuson,* 528 N.W.2d 895 (Minn.App.1995). In *Oelschlager,* the court studied the rationale behind the exclusion for intentional tortfeasors, namely that " 'the courts will not aid' one who has deliberately done harm, so that no man can be permitted to found a cause of action on his own intentional tort." 528 N.W.2d at 899 (*quoting* Restatement (Second) of Torts § 886A cmt. j.) The *Oelschlager* court concluded, "A party that is only vicariously liable for another's intentional tort has neither deliberately caused harm nor committed a tort, so the intentional tort theory does not operate to bar [the plaintiffs'] right to contribution." 528 N.W.2d at 899. I find this reasoning to be persuasive. In the absence of a clear statement of the law in Michigan, I conclude that DSV, being vicariously liable only, is not barred from bringing a contribution claim under Michigan law.

**B.** *Whether Defendant Oppenheimer Should Prevail on Its Motion To Dismiss, Or, Alternatively, Its Motion for Summary Judgment.*

▮ Having concluded that a common law claim for contribution exists, and that plaintiffs are not barred as intentional tortfeasors from making such a claim, I now reach the substance of Oppenheimer's motion to dismiss or, in the alternative, for summary judgment. To withstand defendant's motion, plaintiffs must plead and produce evidence of "(1) a 'common liability' owed by the wrongdoers to the injured plaintiff and (2) payment or satisfaction by the party seeking contribution of the entire obligation or more than his aliquot share of the obligation." *U.S. Fidelity & Guaranty Co.,* 339 N.W.2d at 189 (footnote omitted).

Plaintiffs have not expressly pled, let alone raised an issue of fact, regarding the second element of their claim, that they have paid more than their *pro rata* share to the Careses and the Sheldon Plans. This deficiency alone warrants entry of summary judgment in favor of Oppenheimer. *Reurink Bros.,* 409 N.W.2d at 727–29. However, even if plaintiffs had pled and offered proof on this second element, I find Oppenheimer is enti-

tled to prevail on its motion, because plaintiffs' case also fails the first element.

■ Again, the first element of a contribution claim is a "common liability." A "common liability" arises from a situation "[w]here two or more parties are responsible for an accident which produces a single indivisible injury[.]" *U.S. Fidelity & Guaranty*, 339 N.W.2d at 189 n. 4. "All that is necessary is that the tortfeasors commonly share a burden of tort liability." *Employers Mutual Casualty Company v. Petroleum Equipment, Inc.*, 190 Mich.App. 57, 475 N.W.2d 418, 422 (1991); M.C.L. § 600.2925a(2).

To satisfy the "common liability" requirement, therefore, plaintiffs DSV and its partners must plead and produce evidence that Oppenheimer contributed to a "single indivisible injury"—namely, the loss suffered by the Careses and the Sheldon Plans. If Oppenheimer did not contribute to the loss, it cannot be held liable for contribution. *See* W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 50, at 339–340 (5th ed. 1984) ("The contribution defendant must be a tortfeasor, and originally liable to the plaintiff. If there was never any such liability . . . then there is no liability for contribution."); Restatement (Second) of Torts § 886A cmt. g (1979) ("If the one from whom contribution is sought is not in fact liable to the injured person, he is not liable for contribution."). *See also, Almli v. Santora,* 154 Mich.App. 60, 397 N.W.2d 216 (1986) (where there was no cause of action for negligent supervision between injured child and his parents, parents were not liable to child as joint tortfeasors, and therefore parents were not liable in contribution suit brought by third parties who were sued by child and parents).

Plaintiffs assert two theories under which Oppenheimer may have contributed to the loss suffered by the Careses and the Sheldon Plans. First, they assert that Oppenheimer breached a duty which it owed to the Plans. Second, they assert that Oppenheimer breached a duty which it owed to DSV. I address each theory in turn.

1. *Whether Oppenheimer owed a duty to the Sheldon Plans.*

■ In their complaint plaintiffs allege Oppenheimer owed various fiduciary duties

to the Sheldon Plans. However, plaintiffs have submitted no evidence whatsoever to raise an issue of fact that defendant, together with plaintiffs, owed a common liability to the Careses and the Sheldon Plans. Nor could they. In *Sheldon Co. Profit Sharing Plan & Trust v. Smith,* 828 F.Supp. 1262, 1268–77 (W.D.Mich.1993), I determined that Oppenheimer was not liable to the Careses and the Sheldon Plans under any of the asserted theories. Accordingly, there is simply no "common liability" to the Careses or the Sheldon Plans upon which DSV's claim for contribution may be premised.

Plaintiffs argue my decision in *Sheldon* is not conclusive. They argue that because Oppenheimer and DSV were not adversarial parties in the underlying action, the claim presented here cannot be barred by collateral estoppel. However, there is no question that this court's decision in *Sheldon* conclusively determined the rights between Oppenheimer, on the one hand, and the Careses and the Sheldon Plans, on the other. The *Sheldon* decision accordingly operates to negate a claim for contribution brought by DSV and its partners, to the extent that claim is premised upon an alleged breach of duty owed by Oppenheimer to the Sheldon Plans.

Moreover, the decision of the Michigan Court of Appeals in *Johnson v. Bundy,* 129 Mich.App. 393, 342 N.W.2d 567 (1983), refutes plaintiffs' claim. In *Bundy,* Denver Johnson, a subcontractor involved in building a house, was injured on the job. He and his wife filed a negligence action against Ralph Bundy, the general contractor, and the property owner, Arlo Hammond. Hammond filed a motion for summary judgment, arguing that he could not be held liable to Johnson because it was Bundy, the general contractor, who had control over the premises. The court granted Hammond's motion, absolving him of liability on all of Johnson's claims except for the claim that he negligently hired an independent contractor. After the trial court's grant of partial summary judgment in Hammond's favor, Bundy filed a third-party complaint for contribution against Hammond essentially alleging that Hammond, the

homeowner, maintained control over the area where Johnson was injured. The trial court granted Hammond's motion for summary judgment of Bundy's third-party contribution complaint.

Affirming, the Michigan Court of Appeals reasoned that the prior grant of partial summary judgment in favor of Hammond and against Johnson conclusively determined that Hammond was not negligent with respect to Johnson's injuries. Bundy was, therefore, equitably estopped from pursuing Hammond for contribution. In support of its ruling, the Court of Appeals noted that Bundy had always been a party to the lawsuit, had notice of the motion Hammond filed against Johnson and a full opportunity to be heard. Finally, and significantly, the same issue of Hammond's negligence was present in the contribution claim as was present in the original action between Johnson and Hammond and Bundy. 342 N.W.2d at 572–73.

I find *Bundy* controlling here. I similarly hold that the summary judgment in favor of Oppenheimer in *Sheldon* operates in the nature of an equitable estoppel on the same issues in plaintiffs' contribution claim. To the extent plaintiffs claim Oppenheimer breached various duties owed to the Sheldon Plans, plaintiffs raise the same issues which were raised and decided in my *Sheldon* decision. Therefore, they cannot premise their claim for contribution upon allegations that Oppenheimer breached its duties to the Sheldon Plans.

■ I recognize that one state law claim filed by the Sheldon Plans against Oppenheimer remains pending in arbitration, pursuant to the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.901 *et seq.* Plaintiffs argue that to the extent Sheldon still maintains a viable action against Oppenheimer, a possibility exists of a finding that Oppenheimer contributed to Sheldon's losses—and consequently, that Oppenheimer should share in DSV's liability for damages. Oppenheimer disclaims any liability to the Sheldon Plans under the MCPA. Indeed, Oppenheimer correctly contends that the federal and state securities laws govern securities fraud actions to the exclusion of the MCPA. *Caproni v. Prudential Securities,*

*Inc.,* 15 F.3d 614 (6th Cir.1994); *Silverman v. Niswonger,* 761 F.Supp. 464 (E.D.Mich. 1991); *Mercer v. Jaffe, Snider, Raitt and Heuer,* 730 F.Supp. 74 (W.D.Mich.1990), *aff'd* 933 F.2d 1008 (6th Cir.1991); *Kekel v. Allstate Ins. Co.,* 144 Mich.App. 379, 375 N.W.2d 455 (1985). In response plaintiffs have produced no evidence whatsoever to raise a genuine issue of fact that Oppenheimer is liable to the Sheldon Plans under the MCPA.

Therefore, to the extent plaintiffs' common law contribution claim is based on a theory that Oppenheimer caused the injury to the Sheldon Plans by breaching a duty owed to the Plans, Oppenheimer is entitled to partial summary judgment.

**2. *Whether Oppenheimer breached a duty to DSV.***

■ The fact that Oppenheimer did not breach any duties to the Sheldon Plans does not alone defeat plaintiffs' contribution claim. Plaintiffs also premise their contribution claim on allegations that Oppenheimer breached duties owed to DSV, and thereby indirectly contributed to the "single indivisible injury" suffered by the Careses and the Sheldon Plans. Plaintiffs are correct that the "single indivisible injury" requirement may be satisfied where the various tortfeasors "are liable in tort on separate legal theories." *Employers Mut. Casualty Co. v. Petroleum Equip., Inc.,* 190 Mich.App. 57, 475 N.W.2d 418, 422 (1991). The requirement may also be satisfied even where the tortfeasors are not liable to the same plaintiff. Cf. *O'Dowd v. General Motors Corp.,* 419 Mich. 597, 358 N.W.2d 553, 558 (1984) ("The [contribution] statute does not in terms focus on the identity of the plaintiff, but rather on the nature of the injury suffered[.]"). See *Federal Savings & Loan Ins. Corp. v. Quinlan,* 678 F.Supp. 174 (E.D.Mich.1988) (holding that under Michigan common law, accounting firm was liable to officers and directors of failed savings and loan for contribution, even though accounting firm owed its duty to failed savings and loan, while officers and directors owed a duty to depositors, because insolvency of savings and loan was single indivisible injury).

Plaintiffs allege Oppenheimer owed DSV an independent duty to advise it of possible violations by its agent and partner, Smith. On a motion to dismiss, the court, of course, need not accept mere legal conclusions. *Morgan v. Church's Fried Chicken,* 829 F.2d 10 (6th Cir.1987). Here, plaintiffs have failed to articulate any legal basis whatsoever for this claim. Therefore, I conclude plaintiffs have failed to state a claim upon which relief may be granted. To the extent plaintiffs' complaint alleges Oppenheimer owed a duty to DSV, the breach of which contributed to the Sheldon Plans' loss, plaintiffs' complaint is dismissed.

### IV.

Defendant Oppenheimer also requests this court to grant sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, claiming generally that DSV has no factual or legal basis for asserting its contribution claim. According to Rule 11(c)(1)(A), however, "[a] motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct" alleged to warrant sanctions under the rule.

Defendant's request for sanctions is not in compliance with the rule and is therefore denied. *See* Fed.R.Civ.P. 11(c)(1)(A); *Hoydal v. Prime Opportunities, Inc.,* 856 F.Supp. 327, 329 (E.D.Mich.1994); *Voice Systems Marketing Co. v. Appropriate Technology Corp.,* 153 F.R.D. 117, 120 (E.D.Mich. 1994). In any event, due to the uncertainty of Michigan law on the key issues in this case, as previously discussed, sanctions would be inappropriate.

### V.

To summarize, plaintiffs' contribution claim must necessarily be premised upon either the Michigan contribution statute, or the Michigan common law of contribution. Because the Michigan contribution statute expressly exempts from its coverage suits involving breaches of fiduciary duty, plaintiffs have failed to state a claim under the statute, and defendant's motion to dismiss is granted to the extent plaintiffs rely on the statute.

Defendant's motion is also granted to the extent plaintiffs rely on Michigan common law. Plaintiffs are not barred as intentional tortfeasors from bringing a claim for contribution. However, a contribution claim requires both proof of a "common liability" arising from a "single indivisible injury" and also payment or satisfaction, by the party seeking contribution, of more than its aliquot share of the obligation. Plaintiffs fail to satisfy either element of such a claim.

First, plaintiffs have neither pled nor offered proof that they paid more than their *pro rata* share to the Sheldon Plans and the trustees, and this deficiency alone entitles defendant to prevail. Moreover, plaintiffs offer two theories under which they assert defendant shares a "common liability" for the "single indivisible injury" suffered by the Sheldon Plans and the Careses. Neither theory succeeds. Plaintiffs' first theory is that defendant contributed to the injury because it breached a duty owed to the Sheldon Plans. However, to the extent plaintiffs' claim is premised upon this theory, defendant is entitled to summary judgment, because this court has already conclusively determined that defendant did not breach any duty to the Plans. Plaintiffs' second theory is that defendant contributed to the Plans' injury by breaching a duty it owed to DSV. However, plaintiffs fail to explain how or when any such duty arose. Therefore, I find these allegations insufficient to withstand defendant's motion to dismiss for failure to state a claim.

In short, defendant's motion to dismiss or, in the alternative, for summary judgment, is GRANTED. Defendant's request for sanctions under Fed.R.Civ.P. 11 is DENIED.