CALDWELL v FOX

Docket No. 55788. Argued March 4, 1975 (Calendar No. 6).—Decided June 24, 1975.

A vehicle driven by Kenneth Caldwell was struck from behind by a vehicle owned by Leo Fox and driven by Patrick Fox. Plaintiff brought an action for negligence. Defendants' answer denied any negligence on their part and alleged that the sole proximate cause of the collision was the sudden and unexpected brake failure on their automobile. Defendants' motion to join General Motors Corporation (the manufacturer) and Wilsie-Kelly Chevrolet & Cadillac Company (the seller) as third-party defendants was granted. After the close of proofs, the Saginaw Circuit Court, Hazen R. Armstrong, J., granted the motions of the third-party defendants for directed verdicts and dismissed them from the suit. Judgment was rendered on a verdict for plaintiff. The Court of Appeals, R. B. Burns, P. J., and Bronson and Van Valkenburg, JJ., affirmed (Docket No. 15368). Defendants appeal. *Held:*

1. The original defendants, in their third-party action, had the burden to produce evidence of a defect which caused the accident and to trace the defect to the third-party defendants. From the evidence presented, a jury could reasonably have inferred that there was a defective condition of the brake system of defendants' car which caused the accident and that the defect existed from the time the car left the manufacturer. It was for the jury to weigh this evidence and contradictory evidence and the trial judge was in error in granting a directed verdict in favor of the third-party defendants.

2. The doctrine of contribution among non-intentional wrong-

REFERENCES FOR POINTS IN HEADNOTES

[1, 7] 75 Am Jur 2d, Trial § 336.
[2] 75 Am Jur 2d, Trial § 489.
[3] 63 Am Jur 2d, Products Liability §§ 3, 91.
[4–6] 63 Am Jur 2d, Products Liability §§ 13–21.
[8–10] 18 Am Jur 2d, Contribution §§ 33, 35.
[11, 14] 18 Am Jur 2d, Contribution §§ 64, 74, 96, 99, 102, 105.
[12] 57 Am Jur 2d, Negligence §§ 186–191
[13] 63 Am Jur 2d, Products Liability § 3.

doers in this state has been returned by statute and decisional law to the original equitable rules. The common-law rule that there is no right of contribution between negligent tortfeasors is no longer the law, and the trial judge was in error when he dismissed the third-party defendants on that ground.

3. One of the requirements for equitable contribution is that there be a "common liability" of the wrongdoers to the plaintiff. The third-party complaint alleged that the negligence of the third-party defendants was the sole proximate cause of the injury. By the proceedings in this case the original defendants, third-party plaintiffs, have been deprived of the opportunity to amend their complaint to allege common liability and of the opportunity to present proofs to a jury with respect to the sole or common liability of the third-party defendants.

4. There can be more than one proximate cause of an injury, and the intervening negligence of the driver need not, as a matter of law, cut off the liability of the manufacturer of a car with defective brakes. A jury might reasonably conclude from the evidence that both the defendants and third-party defendants were negligent and owed a common liability to the plaintiff, thus establishing a basis for contribution.

5. Justice dictates that the original defendants be given the opportunity to establish a right to contribution; accordingly, the case is remanded to the circuit court for trial on the third-party complaint without prejudice to the original defendants' opportunity to present an amended complaint seeking contribution.

Reversed and remanded for new trial on the third-party complaint.

1. TRIAL—DIRECTED VERDICT—QUESTION OF FACT.

The jury, not the trial judge, is the trier of fact, and whenever a fact question exists upon which reasonable persons may differ, the trial judge may not direct a verdict.

2. TRIAL—MOTIONS—DIRECTED VERDICT—EVIDENCE—PRIMA FACIE CASE.

In deciding whether to grant a motion for a directed verdict, the trial judge must accord to the non-moving party the benefit of viewing the testimony and all the legitimate inferences that may be drawn from it in a light most favorable to the non-moving party; if the evidence, when viewed in this manner, establishes a prima facie case, the motion for a directed verdict must be denied.

3. PRODUCTS LIABILITY—NEGLIGENCE—ELEMENTS OF LIABILITY—PRIMA FACIE CASE.

Whether the action sounds in warranty or negligence, one seeking to hold a manufacturer and seller liable for a defective product has the burden to produce evidence of a defect in the product which caused the injury or damage and to trace that defect to the manufacturer and seller.

4. PRODUCTS LIABILITY—DEFECTIVE PRODUCT—AUTOMOBILES—CIRCUMSTANTIAL EVIDENCE.

It is within the province of the jury in a products liability case to infer the existence of a defective condition in an automobile from the circumstantial evidence alone; there is no requirement that the actual defect be proven.

5. PRODUCTS LIABILITY—AUTOMOBILES—DEFECTIVE PRODUCT—EVIDENCE.

Testimony of the driver of a five-week-old car that after he had collided with a stopped car because the brakes did not work, he examined the engine compartment and observed brake fluid on the fender wall, a loose connection on the brake line coming from the master cylinder, and brake fluid dripping from the loose connection, which he tightened with a small wrench, apparently restoring the brakes to operational status, and that he had a small amount of brake fluid added to the master cylinder, and admissions in a letter from the general manager of the dealer that the brake master cylinder became defective sometime between delivery of the car new and the date of the accident and that the brake line to one front wheel was inoperative, would allow a jury reasonably to infer that the car had a defective condition of the brake system that was the cause of the accident.

6. PRODUCTS LIABILITY—AUTOMOBILES—DEFECTIVE PRODUCT—MANUFACTURER'S DEFECT—EVIDENCE.

The facts that a car had been purchased new only five weeks before it was in an accident caused by a defective brake system and that there was no evidence that the brake system had been tampered with prior to the accident were sufficient to allow a jury reasonably to infer that the brakes were defective from the time they left the manufacturer of the car.

7. TRIAL—DIRECTED VERDICT—PRODUCTS LIABILITY.

A directed verdict in favor of two third-party defendants, a manufacturer and a seller, was error where the record contains evidence over which reasonable minds could have differed on

each element of the products liability issue the third-party plaintiffs sought to prove.

8. TORTS—CONTRIBUTION—EQUITY.

The general rule of contribution is that one who is compelled to pay or satisfy the whole or to bear more than his aliquot share of the common burden or obligation, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective share.

9. TORTS—CONTRIBUTION—EQUITY.

The doctrine of contribution among non-intentional wrongdoers in this state has been returned by statute and decisional law to the original equitable rules.

10. TORTS—CONTRIBUTION—COMMON LAW.

The former common-law rule of contribution in this state, which barred contribution among non-intentional wrongdoers, is no longer the law.

11. TORTS—CONTRIBUTION—JOINDER—THIRD PARTIES.

A plaintiff's caprice in choosing to join or not to join third-party defendants is not determinant of third-party plaintiff's right to contribution; the right to contribution may be established by third-party plaintiffs' proofs alone.

12. NEGLIGENCE—PROXIMATE CAUSE.

There may be more than one proximate cause for an injury.

13. TORTS—NEGLIGENCE—AUTOMOBILES—DEFECTIVE BRAKES—CONTRIBUTION—COMMON LIABILITY.

A finding by the jury that the driver of a car which was manufactured and sold with a defective brake system was negligent in not avoiding a collision after the brakes on his car failed does not automatically cut off the liability of the manufacturer and seller to the person injured by the driver in the collision, and the jury might reasonably conclude that the driver, manufacturer, and seller owed a common liability to the injured person, thus establishing a right to contribution among them.

14. TORTS—CONTRIBUTION—REMAND—THIRD-PARTY COMPLAINT.

A case is remanded for trial on a third-party complaint without prejudice to the original defendants' (third-party plaintiffs') opportunity to present an amended complaint seeking contribution where justice dictates that original defendants be given the opportunity to establish a right to contribution which they did

not get in the first trial because the trial court erroneously granted directed verdicts for the third-party defendants and dismissed them on the erroneous ground that they had no substantive right to contribution.

*Collison & Fordney, P. C.,* for defendants and third-party plaintiffs.

*Smith & Brooker, P. C.* (by *A. T. Lippert),* for third-party defendant Wilsie-Kelly Chevrolet & Cadillac Company.

*Milliken & Magee,* for third-party defendant General Motors Corporation.

J. W. FITZGERALD, J. This lawsuit arose out of a rear-end collision which occurred on March 13, 1969 in Saginaw County. Simply stated, the vehicle driven by the original plaintiff, Kenneth Caldwell, was struck from behind by a vehicle driven by the original defendant Patrick Fox. Fox claimed that the accident was caused by a defective brake system on his vehicle. Original plaintiff filed suit against original defendants on May 2, 1969. Original defendants answered, denying any negligence on their part and alleging that the sole proximate cause of the collision was the sudden and unexpected brake failure on original defendants' automobile.

Original defendants then filed a motion to join General Motors Corporation (the manufacturer) and Wilsie-Kelly Chevrolet & Cadillac Company (the seller) as third-party defendants. That motion was granted and the above named parties proceeded to trial. However, at trial after the close of proofs, the trial judge dismissed the third-party defendants from the lawsuit. The cause was sent to the jury with only original plaintiff and original defendant involved. The jury rendered a verdict

for plaintiff and awarded him an $18,000 judgment. Defendants appealed this adverse ruling of the trial judge, along with other issues, to the Court of Appeals which affirmed in an unpublished memorandum opinion dated February 20, 1974. We granted defendant's application for leave to appeal on June 26, 1974, but limited consideration to third-party issues only.[1] We conclude that the trial court improperly granted directed verdicts in favor of third-party defendants and remand for new trial. The Court of Appeals is reversed.

## I.

In their third-party complaint, the original defendants stated alternative claims, sounding in negligence and breach of warranty, against both third-party defendants. As such, the third-party complaint was typical of a common "garden variety" products liability lawsuit filed in this state.

At the close of the proofs, equally typical motions for directed verdicts were filed by both third-party defendants. In deciding these motions the trial judge reviewed the testimony and found "no proof of a manufacturing defect by the third-party defendant". The original defendants' proofs were categorized as "legally insufficient" and the trial judge summarily granted the third-party defendants' motions for directed verdicts.

As their first issue, original defendants argue that the trial judge erred in granting these motions, because the evidence, and all reasonable inferences which might be drawn, when taken in a

[1] The limited grant was based upon our conclusion that the Court of Appeals had properly resolved the other issues and we did not wish to further delay the plaintiff from enjoying his judgment. At oral argument appellants' attorney verified the fact that the plaintiff's judgment had indeed been satisfied.

light most favorable to them, established a prima facie case against the third-party defendants.

At the outset we reiterate a well-established principle of law: The jury, not the trial judge, is the trier of fact. Whenever a fact question exists, upon which reasonable persons may differ, the trial judge may not direct a verdict. Conversely, when no fact question exists, the trial judge is justified in directing a verdict. In deciding whether or not to grant a motion for a directed verdict, the trial judge must accord to the non-moving party the benefit of viewing the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the non-moving party. If the evidence, when viewed in this manner, establishes a prima facie case, the motion for a directed verdict must be denied. In *Detroit & Milwaukee R Co v Van Steinburg,* 17 Mich 99, 117 (1868), Chief Justice THOMAS M. COOLEY said:

"In determining this question, we must look at the case as it appears from the plaintiff's own testimony, unqualified by any which was offered on the part of the defendants, and must concede to him any thing which he could fairly claim upon that evidence. He had a right to ask the jury to believe the case as he presented it; and, however improbable some portions of his testimony may appear to us, we can not say that the jury might not have given it full credence. It is for them, and not for the court to compare and weigh the evidence."

This standard was most recently reaffirmed in *Dodd v Secretary of State,* 390 Mich 606, 612; 213 NW2d 109 (1973), where it was said that the court must "view the testimony in the light most favorable to the plaintiff and draw the reasonable inferences therefrom which are in his favor".

Viewed favorably for the original defendants,[2] the record reveals that on February 7, 1969 Leo Fox purchased a new 1969 Chevrolet Chevelle from Wilsie-Kelly Chevrolet & Cadillac Company. The car was purchased for and primarily operated by Patrick Fox. Approximately five weeks after the purchase, on March 13, 1969, while Patrick Fox was driving to the Saginaw Steering Gear Plant, the car was involved in a rear-end collision.

Patrick Fox testified that as he approached the intersection of M-46 and Towerline Road he removed his foot from the accelerator pedal and allowed the car to coast as he turned his vehicle into the left-turn lane. He observed a vehicle ahead of him in the left-turn lane which was stopped with its left-turn indicator flashing. He then depressed the brake pedal, but the brakes did not work. He continued to pump the brakes and they may have responded slightly before impact.

After the collision, Patrick Fox got out of his car to survey the damage to his vehicle. Upon examining the engine compartment, Mr. Fox observed brake fluid on the fender wall, a loose connection on the brake line coming from the master cylinder, and brake fluid dripping from the loose connection. Mr. Fox used a small wrench to tighten the loose connection. This action apparently restored the brakes to an operational status.

After the accident was investigated by the State Police, Mr. Fox drove the damaged car to a service station in Caro where an attendant added a small amount of brake fluid to the master cylinder. He then drove the car to the Wilsie-Kelly dealership for repairs. At the dealership, he pointed out the

---

[2] The reader is advised that the record also reflects a great deal of contradictory testimony from the plaintiff, the police officers who investigated the accident, and the two witnesses from third-party defendant Wilsie-Kelly.

damage and explained the failure of the brakes to a salesman and the service manager.

Harold Kilbourn, service manager for the dealership, testified that he road-tested the car after it was left for repairs and found a partial loss in braking power in the rear wheels. He also observed brake fluid on the inner fender wall.

Both Patrick and Leo Fox were allowed to testify about statements purportedly made by Mr. Kilbourn that the rear brakes were inoperative and that the master cylinder was defective and must be replaced. Also admitted into evidence was a letter written by the dealership general manager which read:

"3-17-69

"To Whom It May Concern:

"Upon examination by my service department it was determined that the master cylinder controlling the rear wheels of the 1969 Chevelle delivered to Mr. Leo Fox and Patrick Fox became defective sometime between the delivery date of 2-7-1969, and the date of the accident. This failure by the cylinder controlling the rear wheels would reduce the effective braking by 50%. It was also noted the *[sic]* the line to one front wheel was inoperative.

"Respectfully,
S. L. Wilsie
Shurley L. Wilsie,
General Manager"

In order to avoid a directed verdict on the third-party complaint, the original defendants had to establish a prima facie case of liability against the third-party defendants. Common to most products liability cases, regardless of the theory of liability, is the nature of certain proofs required to support a finding of liability. In *Piercefield v Remington Arms Co, Inc,* 375 Mich 85, 98–99; 133 NW2d 129

(1965), this Court commented on the nature of these proofs.

"As made clear above, a plaintiff relying upon the rule must prove a defect attributable to the manufacturer[3] and causal connection between that defect and the injury or damage of which he complains. When able to do that, then and only then may he recover against the manufacturer of the defective product."

While the Court in *Piercefield, supra,* was concerned with a breach of warranty theory, the above elements of liability are equally applicable to a lawsuit sounding in negligence. Thus original defendants had an initial burden to (1) produce evidence of a defect which caused the accident and (2) trace that defect into the hands of the third-party defendants.

On the facts of this case, we believe that a jury could have reasonably inferred the existence of a defective condition in the brake system which was a cause of the accident. The testimony of Patrick Fox was evidence of a malfunction in the brake system. It is within the province of the jury to infer the existence of a defective condition from circumstantial evidence alone; there is no requirement that the actual defect need be proven. *Snider v Bob Thibodeau Ford, Inc,* 42 Mich App 708; 202 NW2d 727 (1972). Additionally, from the admissions attributable to third-party defendant Wilsie-Kelly, the jury could have found the existence of a defective master cylinder and an inoperative brake line which combined to cause some loss in braking power. Certainly these facts were contradicted by other evidence, but it was for the jury to weigh the evidence and resolve these contradictions.

[3] This doctrine applies to the sellers of defective goods as well. *Bronson v J L Hudson Co,* 376 Mich 98; 135 NW2d 388 (1965).

Likewise, from the original defendants' proofs, we believe a jury could have reasonably inferred that a defective condition existed in the brake system of the car from the time of its assembly. The Foxes had purchased the car only five weeks before the accident and there was no evidence that the brake system had been tampered with prior to the accident. This evidence is sufficient for a jury to infer reasonably that the brakes were defective from the time they left the manufacturer. See *Snider, supra;* and *Garmo v General Motors Corp,* 45 Mich App 703; 207 NW2d 146 (1973).

For these reasons we believe that the trial judge was in error when he directed a verdict in favor of both third-party defendants. This record contains evidence over which reasonable minds could have differed on each element of the products liability issue original defendants sought to prove. The motions for directed verdicts were improperly granted.

## II.

At the same time the trial judge granted the directed verdict to the third-party defendants, he also granted their motions for dismissal of the third-party complaint because of an improper joinder of the third-party defendants. When explaining his decision, the trial judge said:

"It appears to the Court now that the joinder in the first instance was proper. The defendants, at the outset, were entitled to plead their claims against the third-party defendants, if any substantive right exists. A review of these claims show that the defendant's theories were generally negligent *[sic]* in breach of expressed or implied warranty.

"The defendants then claimed recovery for any sum

which they may thereafter have been required to pay
for a judgment taken against them.

"The case was tried on the pleadings thus presented,
and the court finds that these variant legal theories are
not such that should be joined in a single lawsuit.

"Having given consideration to the decision of *Moyses
v Spartan Asphalt Paving Company,* 383 Mich 314, in
which Justice Black said—this is at page 344—'The
primary defendant Spartan was never possessed of a
substantive right to implead as now claimed under
Section 2925 and Rule 204. In such regard, it is signifi-
cant that Spartan's latest third-party complaint sets
forth no allegation that it and the newly-proposed third-
party defendants are or could be adjudged joint tortfea-
sors either within 2925 or by the common law.'

"Such is the case here; therefore, the court grants the
motion to dismiss as to the third-party defendants."

The court rule which permits a defendant to
implead a third party is GCR 1963, 204 and reads
as follows:

".1 When Defendant May Bring in Third Party.

· "(1) Subject to the provisions of Section 3030 of the
Insurance Code of 1956, before the service of his answer
a defendant may move ex parte or, after the service of
his answer, on notice to the plaintiff, for leave as a
third-party plaintiff to serve a summons and complaint
upon a person not a party to the action who is or may
thereafter be liable to such third-party plaintiff, by
right of contribution or otherwise, for all or part of the
plaintiff's claim against him.

"(2) If the motion is granted and the summons and
complaint are served, the person so served, hereinafter
called the third-party defendant, shall make his de-
fenses to the third-party plaintiff's claim as provided in
Rule 111 and his counterclaims against the third-party
plaintiff and cross-claims against other third-party de-
fendants as provided in Rule 203. The third-party de-
fendant may assert against the plaintiff any defenses
which the third-party plaintiff has to the plaintiff's
claim. The third-party defendant may also assert any

claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff.

"(3) The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert his defenses as provided in Rule 111 and his counterclaims and cross-claims as provided in Rule 203.

"(4) Any party may move for severance, separate trial, or dismissal of the third-party claim; the court may direct a final judgment upon either the original claim or the third-party claim alone in accordance with the provisions of sub-rule 518.2.

"(5) A third-party defendant may proceed under this rule against any person not a party to the action who is or may be liable to him for all or part of the claim made in the action against the third-party defendant, upon obtaining leave of court.

".2 When Plaintiff May Bring in Third Party. When a claim or counterclaim is asserted against a plaintiff, he may cause a third party to be brought in under circumstances which under this rule would entitle a defendant to do so."

In applying GCR 1963, 204 to the case at bar, the trial judge relied on *Moyses v Spartan Asphalt Paving Co,* 383 Mich 314; 174 NW2d 797 (1970), to arrive at his decision to grant the motions to dismiss. However, it appears that the trial judge misinterpreted the impact of the *Moyses* opinion. A careful reading of *Moyses, supra,* we are convinced, leads to the opposite conclusion.

*Moyses* involved a head-on collision between a station wagon (plaintiff's vehicle) and a dump truck (original defendant's vehicle). In two separate third-party complaints, Spartan, the original defendant, charged that the accident was exclusively caused by a blowout of the left front tire on

the dump truck. The trial judge granted Spartan's first third-party complaint against third-party defendants (1) Russ Zuker Tire Service, Inc., and (2) Michelin Tire Corporation. Spartan charged that because of the defective tire, the third-party defendants would be liable for either the full or a contributory amount of the damages.

The swift administration of justice ground to a standstill as a myriad of pleadings, motions, interrogatories, depositions, etc., delayed trial of plaintiff's cause of action. The final hurdle placed between the plaintiff and his day in court was Spartan's "Second Amended Third-party Complaint" which sought to add two additional third-party defendants: (3) the Michelin Corporation, and (4) Manufacture Francaise Des Pneumatiques Michelin, thus touching off a new round of motions, pleadings, etc.

The trial judge denied Spartan's motion to add the latter corporations, citing the likelihood of delay as the reason. Spartan appealed, claiming it had the absolute right to joinder in order to avoid losing any substantive rights to contribution from the two additional third-party defendants.

This Court disagreed with Spartan's argument for two reasons, either of which standing alone would have disposed of the appeal.

1. Grant or denial of a motion to join third parties under GCR 1963, 204.1 depends not upon substance but upon judicial discretion. It follows that a denial of joinder under Rule 204.1 does not affect any substantive rights of the original defendant; these remain fully intact despite denial. In his practice handbook, Judge Horace W. Gilmore comments (1 Gilmore, Michigan Civil Procedure Before Trial, § 8.10, p 332):

"Impleader is by motion ex parte before service of the

answer, or by motion with notice to plaintiff after the service of an answer. The granting of the motion rests within the sound discretion of the court, and there is no absolute right to join a third party defendant. Generally courts will be liberal in allowing the joinder of third party defendants, but it should be avoided where there might be prejudice to either party because of the complexity of the case. It should be remembered, however, that if there is objection on this basis, the court can always order separate trials of separate issues under GCR 1963, 505.2."

Judge Gilmore suggested that when acting on a motion made under GCR 1963, 204, the trial judge should balance the advantages of having the third party in the case against:

a. the probability of delay,
b. the complications of trial,
c. the timeliness of the motion,
d. the similarity of the evidence,
e. the possibility of prejudice to the plaintiff, and
f. the possibility of prejudice to the third-party defendant.

It is readily apparent from his language in *Moyses, supra,* that Justice BLACK was appalled by the extensive delay visited upon the plaintiff by the legal maneuverings of the third-party plaintiff and defendants. Clearly the Court's first response to Spartan's argument of an absolute right to join third parties under GCR 1963, 204 was that grant or denial of such a motion is within the sound discretion of the trial judge and that the trial judge in *Moyses* did not abuse his discretion by denial of the motion when the reason for denial was the possibility of another long delay of the trial.

2. The Court also found an alternative ground to

affirm the trial judge's denial of the motion. Considering the law in effect at the time of the motion, this Court determined that Spartan was not possessed of any substantive right to contribution from the third-party defendants it sought to join. However, after disposing of this issue, the Court went on to abolish the remnants of Michigan's common-law bar to contribution.

"Stimulated by the national advancement of principles set forth in the Uniform Contribution Among Tortfeasors Act, *supra,* the tendency of other courts to provide by judicial action the right of contribution on behalf of all but intentional wrongdoers, and the compelling admonitions of modern writers like Prosser, we have decided to overrule what is left of Michigan's common-law bar of contribution between or among 'wrongdoers,' wilful or intentional wrongdoers excepted. Such overrulement will leave the issue of contribution to equitable principles as known hitherto and now in matters of express or implied contract. * * *

"Our decision to overrule will apply retroactively so as to include such claims for contribution as may have arisen no more than six months prior to the date of release of this opinion, by the fact of payment by the claimant of more than his *pro rata* share." *Moyses, supra,* pp 334–336.

The Court did not apply the new standard in *Moyses.*

It is the foregoing portion of the opinion in *Moyses* that apparently confused the trial judge. He granted the motion to dismiss the third-party complaint upon the belief that the common-law bar to contribution among wrongdoers rather than principles of equity were controlling. From his language quoted above, it is obvious that the trial judge applied pre-*Moyses* law (common-law bar to contribution) to a situation where post-*Moyses* law

(principles of equity) should have been applied. In hope of clarifying the problem, we briefly retrace the history of the contribution doctrine to demonstrate the impact of *Moyses.*

The doctrine of contribution had its origin in equity. In *Lorimer v Julius Knack Coal Co,* 246 Mich 214, 217; 224 NW 362 (1929), this Court discussed contribution:

> "It has often been stated by the courts that contribution is founded on principles of equity and natural justice. The doctrine rests on the principle that when parties stand *in aequali jure,* the law requires equality, which is equity, and one of the parties will not be obliged to bear more than his just share of a common burden or obligation to the advantage of his co-obligors. 13 C.J. p 821. It is applied in those cases where one or more of several parties equally obligated have done more than their share in performing a common obligation. 'And one who has paid more than his share of the joint obligation may recover contribution from his co-contractors.' *Comstock v Potter,* 191 Mich 629, 637 [1916]."

The general rule of contribution is that one who is compelled to pay or satisfy the whole or to bear more than his aliquot share of the common burden or obligation, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective shares.

A common-law exception to the above general rule grew out of the case of *Merryweather v Nixan,* 8 TR 186; 101 Eng Rep 1337 (1799). The exception was based on a policy decision to deny the right to the equitable relief of contribution to intentional wrongdoers. Prosser, Torts (4th ed), § 50, pp 305–306:

"The ground of the decision would appear to have been simply the fact that the parties had acted intentionally and in concert, and the plaintiff's claim for contribution rested upon what was, in the eyes of the law, entirely his own deliberate wrong."[40]

"[40]. Compare the celebrated Highwayman's Case, Everet v Williams, Ex 1725, reported in 1893, 9 L.Q. Rev 197, and Costigan's Cases on Legal Ethics (1917) 399. This was a suit by one highwayman against another for an accounting of their plunder. The bill was dismissed with costs to be paid by the defendant; the plaintiff's solicitors were attached and fined fifty pounds each for contempt. Both plaintiff and defendant were subsequently hanged. In short, contribution was not allowed."

The ground of *deliberate* or *intentional* wrong was broadened by American courts to include negligent wrongs. This unfortunate expansion was occasioned by the liberalization of joinder rules to permit the joinder of one action of all those who were responsible for an indivisible injury. Professor Prosser's comments are typical of the dissatisfaction with this development. Prosser, Torts (2d ed), § 46, pp 248–249:

"There is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or his collusion with the other wrongdoer, while the latter goes scot free. Half a century of vigorous denunciation has had its effect in the passage of statutes in some twenty states, which to a greater or less extent permit contribution among tortfeasors. Some of these acts are limited to contribution between defendants against whom a joint judgment has been rendered. Others are quite broad and general in scope, declaring the principle of contribution and leaving its administration to the courts. Still others provide methods by which the tortfeasor from whom contribution is sought may be joined as a defendant, and his liability determined in the

original action. The drafting problem has not been free from difficulty.

"It seems quite clear that the rule denying contribution in favor of negligent tortfeasors is in full retreat, and that in due course of time the pressure of opinion will compel its abolition. As to wilful wrongdoers, or those who are guilty of the more flagrant forms of misconduct, there is no indication of any desire or tendency to relax the original rule."

This Court, in *Moyses,* reviewed draft legislation[4] from the National Conference of Commissioners on Uniform State Laws which was designed to reestablish the right to contribution for other than wilful or intentional tortfeasors. After comparing this proposed legislation with MCLA 600.2925; MSA 27A.2925 and determining that the Michigan Legislature had only partly abolished the common-law bar, the Court characterized pre-*Moyses* law as follows:

"In veritable sum, 'joint tortfeasors' only, not other grades or types of severally liable tortfeasors, may upon third-party discretion of the court have contribution under the second sentence of § 2925(1)." *Moyses, supra,* p 331.

The *Moyses* Court proceeded to complete the job that the Legislature had left unfinished:

" * * * by overruling the remnants of Michigan's common-law rule which—loosely—has barred 'wrongdoers' from the equitable right of contribution where, by the standards of equity, that right exists generally." *Moyses, supra,* p 329.

Clearly *Moyses* returned the doctrine of contri-

---

[4] Uniform Contribution Among Tortfeasors Act (9 ULA pp 233 *et seq.).*

bution among non-intentional wrongdoers to the original equitable rules. One of these rules, a requirement that the wrongdoers owe a *"common liability"* to the plaintiff, is cited by the appellees as a reason for affirming the action of the trial judge.[5] Appellees assert that even if they were liable on the products liability issue there is no possible basis for determining that both the original defendants and the third-party defendants owed a common liability to the plaintiff. This is so, it is argued, because: (1) there can be no common liability where, as in this case, plaintiff chooses to assert no claim against named third-party defendants,[6] and (2) there can be no common liability where the third-party complaint itself negates the theory of combined or common negligence by asserting that the negligence of third-party defendants was the *sole* proximate cause of the injury.[7]

With respect to the first contention we answer that plaintiff's caprice in choosing to join or not to join third-party defendants is not determinant of third-party plaintiffs' right to contribution. The right to contribution may be established by third-party plaintiffs' (here original defendants') proofs

---

[5] *See, e.g., Moyses, supra,* p 330. If the jury believed that both original defendants and the third-party defendants were responsible for the injuries to the plaintiff, then a basis for allowing contribution would exist. All of the defendants would share a common liability to the plaintiff because the type of injuries suffered by the plaintiff are not apportionable amongst the various defendants on any rational basis. Where two or more individuals are responsible for an accident which produces a single indivisible injury, each individual wrongdoer may be held liable for the entire amount of the damages and thus each of the defendants shares a common liability with the others that are also responsible for the injury.

[6] Plaintiff chose not to plead over against third-party defendants as permitted by GCR 1963, 204.1(3).

[7] Paragraph 3 of the third-party complaint stated in pertinent part: "That the *sole,* proximate cause of the accident, as complained of by plaintiff, Kenneth Richard Caldwell, and as above described, was due to mechanical failure of defendant and third-party plaintiff's automobile." (Emphasis supplied.)

alone. See *Herrera v Voris,* 365 F Supp 744 (ED Mich, 1973), *affirmed* 503 F2d 1023 (CA 6, 1974).

In answer to the second contention, we observe that the third-party complaint was filed before dismissal of third-party defendants had occurred and before judgment against original defendants had entered. At the time of the filing of the complaint it is understandable that defendants and third-party plaintiffs might seek to avoid liability and assert that third-party defendants' negligence was the sole proximate cause of plaintiff's injury. Had the judge, in the exercise of his judgment, permitted impleader, the proofs at trial would have determined whether original defendants' characterization of third-party defendants' conduct prevailed with the jury. There was no proper exercise of discretion in this case, however. The judge, misconstruing the law, concluded that impleader was improper. In addition, directed verdict for third-party defendants was improperly granted. At the present time judgment in favor of plaintiff has been rendered against original defendants. By the nature of these proceedings original defendants have been deprived of the opportunity to amend their complaint to allege common liability[8] and have been deprived of the opportunity to present proofs to a jury with respect to the sole or common liability of third-party defendants.

A finding of common liability was, and still is, possible in this case. Our discussion of the first issue indicates that the jury should have been allowed to decide whether or not the accident was caused by a defective product attributable to either of the third-party defendants. Thus, the jury could have determined, under one of the products liability theories, that either or both of the third-

[8] *See* GCR 1963, 118.1 and 118.3.

party defendants were responsible for the occurrence of the accident.

While the jury could have concluded from the evidence that original defendants were solely responsible for the accident, other evidence was introduced which, if believed by the jury, could have established that third-party defendants shared responsibility for the accident. During cross-examination, Patrick Fox admitted that he may have been able to avoid striking the plaintiff's vehicle even after the brakes on his vehicle had failed.

"*Q.* Did you not have an opportunity here to turn your car to the right and back to the same lane you were traveling and missed this Caldwell car?

"*A.* It would have been possible."

While this testimony would support a finding of negligence on the part of the original defendants, this subsequent negligence does not automatically prevent the third-party defendants from being held responsible. In *Comstock v General Motors Corp,* 358 Mich 163; 99 NW2d 627 (1959), it was decided that the intervening negligence of a driver need not, as a matter of law, cut off the possible liability of the manufacturer of a car having defective brakes. There may be more than one proximate cause for an injury. A jury might reasonably conclude that all of the defendants owed a common liability to the plaintiff, and therefore a basis for the right to contribution could be established.

Justice dictates that original defendants be given the opportunity to establish a right to contribution. We accordingly reverse the Court of Appeals and remand this case to the circuit court for trial on the third-party complaint without preju-

dice to original defendants' opportunity to present an amended complaint seeking contribution.

T. G. KAVANAGH, C. J., and WILLIAMS, LEVIN, and COLEMAN, JJ., concurred with J. W. FITZGERALD, J.

SWAINSON and LINDEMER, JJ., took no part in the decision of this case.