199 Mich. App. 202 (1993)
501 N.W.2d 237
AMERICAN NATIONAL FIRE INSURANCE COMPANY
v.
FRANKENMUTH MUTUAL INSURANCE COMPANY
Docket No. 135663.
Michigan Court of Appeals.
Submitted December 10, 1992, at Detroit.
Decided April 5, 1993, at 10:50 A.M.
Sommers, Schwartz, Silver & Schwartz, P.C. (by Leonard B. Schwartz and Patrick Burkett), for the plaintiff.
Garan, Lucow, Miller, Seward, Cooper & Becker, P.C. (by James L. Borin and Robert D. Goldstein), for the defendant.
Before: SHEPHERD, P.J., and BRENNAN and L.P. BORRELLO,[*] JJ.
SHEPHERD, P.J.
This case involves a dispute between two insurance companies over sharing the costs of defense and settlement in an underlying wrongful death action arising out of a motor vehicle accident. Plaintiff, American National Fire Insurance Company, undertook the defense of the underlying action and paid $300,000 in settlement. Plaintiff then sought to recoup a proportionate share of the settlement and defense costs from defendant, Frankenmuth Mutual Insurance Company. Plaintiff now appeals as of right from the circuit court's order granting defendant's motion for summary disposition and denying plaintiff's cross motion for summary disposition. We vacate the trial court's order and remand for further proceedings consistent with this opinion.
I
The case was submitted to the trial court upon *205 an agreed-upon statement of facts. At approximately 8:25 P.M. on December 2, 1984, a car driven by Scott Whitney, traveling on the southbound lane of Bricker Road in St. Clair County, collided with the rear of a combine that was completely blocking the southbound lane of the road. Whitney's passenger, Christopher Rondo, was killed in the collision. The combine had been used by Floyd Campbell for harvesting corn in a neighbor's field along Bricker Road. Afterwards, Campbell parked the combine in the southbound lane of Bricker Road and used an auger, which extended across the northbound lane of Bricker Road, to convey the harvested load of corn to a pickup truck, which was parked adjacent to the northbound lane of the road. At the time of the accident, the combine was unloading the corn onto the truck, and the auger was still extended. Only the combine was physically struck by Whitney's car.
Both the combine and the truck were owned by Campbell. The combine was expressly covered by plaintiff's farm policy, which included coverage for bodily injury liability, while the truck was covered under defendant's no-fault automobile insurance policy.
The decedent's personal representative filed a wrongful death action against Campbell and Whitney. Plaintiff undertook the defense of Campbell. Plaintiff tendered the defense of the suit to defendant and also sought contribution. Defendant declined both requests.
The wrongful death suit was settled for $350,000 (Whitney provided $50,000 and plaintiff, on behalf of Campbell, provided $300,000). Defendant agreed that the $300,000 payment by plaintiff was a reasonable contribution to the settlement package. The underlying litigation was concluded by a consent judgment and satisfied by plaintiff. On cross *206 motions for summary disposition, the trial court granted defendant's motion, ruling that defendant's residual liability policy did not provide coverage because the truck was not involved in the accident.
II
Although the trial court did not state the ground on which it granted defendant's motion for summary disposition, it was presumably granted under MCR 2.116(C)(10), which provides that summary disposition of all or part of a claim or defense may be granted when
[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law.
A motion for summary disposition pursuant to this subrule tests whether there is factual support for a claim. Giving the benefit of reasonable doubt to the nonmovant, the court must determine whether a record might be developed that will leave open an issue upon which reasonable minds could differ. Farm Bureau Mutual Ins Co of Michigan v Stark, 437 Mich 175, 184-185; 468 NW2d 498 (1991). The courts are liberal in finding a genuine issue of material fact. St Paul Fire & Marine Ins Co v Quintana, 165 Mich App 719, 722; 419 NW2d 60 (1988).
III
We believe that the trial court erred in ruling that as a matter of law the truck was not involved in the accident that caused Rondo's death. As the agreed-upon statement of facts indicates, at the *207 time of the accident, the combine was unloading harvested corn, by means of the auger, onto the pickup truck, which was parked alongside Bricker Road. Even though the truck was not physically struck by the car in which the decedent was a passenger, it was undisputed that the truck was involved in the transfer of corn. Reasonable minds could conclude that the combine and the truck were connected by the auger so as to constitute a functional unit for the purpose of the transfer of grain and that the transfer could not have been accomplished without the joint participation of both vehicles. The extent to which each element of the functional unit participated in the accident would also be a matter for the trier of fact to resolve. For the trial court to conclude otherwise was plainly erroneous.
IV
Given that the trial court erred in concluding that the truck was not involved in the accident, the question is then presented whether the truck played a causal role in the occurrence so as to trigger defendant's insurance policy.
Defendant's policy insuring Campbell and his truck provided residual tort liability coverage under the following circumstances:
Part B  Residual Liability Agreements "A" and "B".
Coverage A  Bodily Injury Liability; Coverage B  Property Damage Liability: To pay on behalf of the insured, all sums which the insured shall become legally obligated to pay as damages because of:
A. Bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by any person;

*208 B. Injury to or destruction of property including loss of use thereof, hereinafter called "property damage"; arising out of the ownership, maintenance or use of the owned automobile or any nonowned automobile. These agreements provide the residual liability insurance required by Section 3131 of Chapter 31 of the Michigan Insurance Code.
* * *
(B) ... 2.... 3. Definitions under Part "B" "use" of an automobile includes the loading and unloading thereof....
Defendant argues that there was no residual liability coverage under the policy because as a matter of law the wrongful death did not arise out of the use of the truck. We disagree.
The test for establishing causation between an injury and the use of a motor vehicle was set forth in Kangas v Aetna Casualty & Surety Co, 64 Mich App 1; 235 NW2d 42 (1975). In Kangas, this Court, interpreting the phrase "arising out of the ownership, maintenance or use of the owned automobile" in a pre-no-fault insurance contract, stated:
[W]e conclude that while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle. [Id., p 17.]
In Thornton v Allstate Ins Co, 425 Mich 643; 391 NW2d 320 (1986), the Supreme Court appeared to adopt the Kangas test for purposes of no-fault liability. See Greater Flint HMO v Allstate Ins Co, 172 Mich App 783, 787; 432 NW2d 439 (1988), where this Court applied the Kangas rule in a case *209 involving no-fault benefits arising from MCL 500.3114(5); MSA 24.13114(5).[1]
In the instant case, there exists a genuine issue of material fact whether the truck played a causal role in the accident under the Kangas standard. Although the trial court concluded that the truck's relationship to the accident was nothing more than fortuitous or incidental, it is a disputed issue of material fact whether there was a causal nexus between the use of Campbell's truck and the wrongful death of Mr. Rondo, thus triggering defendant's policy for an injury "arising out of ... the use of the owned automobile." Here, the combine, the auger, and the truck were so closely intertwined that reasonable minds could conclude that they constituted a single unit whose purpose was to unload harvested corn. Even though the truck was parked alongside the road and was not struck by the car, it is a disputed factual issue whether the truck, in operating as part of this single unit, caused the accident. Viewed in this manner, the relationship of the truck to the accident was more than simply fortuitous, incidental, or but for. See Greater Flint HMO, supra, p 788, where this Court held that physical contact was not required in order to establish a causal nexus between the accident and the insured's vehicle.
V
Defendant nevertheless contends that even if *210 the truck played a causal role in the accident, summary disposition is justified because an exclusion in defendant's policy disallows coverage for bodily injury arising out of the operation of farm machinery.
As a general rule, this Court declines to consider an issue that was not decided by the trial court unless the issue is one of law and the record is factually sufficient, or unless failure to consider the issue would result in manifest injustice. Detroit v Dep't of Social Services, 197 Mich App 146, 158; 494 NW2d 805 (1992). Although the trial court did not reach this issue, we will decide it because we believe that this exclusion violates public policy.
Under MCL 500.3101(1); MSA 24.13101(1) of the no-fault act:
The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance.
Under MCL 500.3131(1); MSA 24.13131(1):
Residual liability insurance shall cover bodily injury and property damage which occurs within the United States, its territories and possessions, or in Canada. This insurance shall afford coverage equivalent to that required as evidence of automobile liability insurance under the financial responsibility laws of the place in which the injury or damage occurs. In this state this insurance shall afford coverage for automobile liability retained by section 3135.
MCL 500.3135(1); MSA 24.13135(1) provides:
A person remains subject to tort liability for *211 noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.
As the Supreme Court stated in State Farm Mutual Automobile Ins Co v Ruuska, 412 Mich 321, 335; 314 NW2d 184 (1982):
Sections 3101, 3131 and 3135 of the no-fault act, when construed together, make it plain that at the time of the accident the Legislature intended that
1. A person using a motor vehicle that causes certain types or damages shall remain liable in tort (§ 3135);
2. An insurance policy in this state shall afford coverage for such liability (§ 3131);
3. An owner or registrant of a motor vehicle shall purchase such a policy (§ 3101). [Emphasis in original.]
In the case at bar, defendant's attempt to exclude insurance coverage arising out of the operation of farm machinery conflicts with the liability coverage required by the no-fault act. As the Supreme Court observed in Shavers v Attorney General, 402 Mich 554, 596; 267 NW2d 72 (1978), upholding the constitutionality of the no-fault act, the Legislature required residual liability coverage as well as personal injury protection benefits under the no-fault act in order to protect the general welfare of the public. The Court remarked:
The insurance required under the No-Fault Act protects not only the driver of a motor vehicle, but also passengers, pedestrians, owners of fixed property, and owners of properly parked vehicles.... This principle, that those who use the public highways may properly be required to provide security *212 for loss that may predictably be suffered by others on account of such use, can properly be extended to require security for the loss that the state itself might otherwise incur on account of such use. [Id., pp 596-597.]
In subsequent decisions, the Court has reiterated that the purpose of making both residual liability coverage and personal injury protection benefits compulsory under the no-fault act is "to protect the members of the public at large from the ravages of automobile accidents." Coburn v Fox, 425 Mich 300, 309; 389 NW2d 424 (1986).
In this case, the exclusion seeks to deny the liability coverage required by the no-fault act because a farm implement, the combine, was also involved. However, whether the truck, as part of a unit carrying out the unloading operation, played a causal role as a motor vehicle in the accident is a disputed issue of fact. In view of the conflict between the exclusion and the language of the statute, we invalidate the attempted exclusion in order to read defendant's policy so as to provide the required coverage. Ruuska, supra, pp 336-337.
Stated in other terms, the public policy of this state has been declared by the Legislature to require no-fault coverage if a motor vehicle is involved in an accident. The parties to an insurance contract may not defeat that policy by agreement.
VI
Given that a genuine issue of material fact exists regarding whether the truck caused the accident, there arises a question about the effect of the parties' "other insurance" clauses in determining their respective liabilities for the loss where the named insured is the same person on both *213 policies, purportedly insured against the same risk.
Plaintiff's "other insurance" clause provides:
8. Other Insurance  Coverage G  Liability
If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss as the limit of insurance that applies under this policy bears to the total amount of insurance covering this loss. However, with respect to a loss insured against arising out of the ownership, maintenance, operation, use, loading or unloading of:
(a) Any motor vehicle; or
(b) Watercrafts;
This insurance will not apply to the extent that any collectible insurance, whether on a primary, excess or contingent basis is available to you.
In the present case, plaintiff's other insurance clause functions as an "excess clause," because the loss arises out of the use of the truck in unloading the harvested corn, which is covered under defendant's policy.
On the other hand, defendant's "other insurance" provision provides:
If the insured has other insurance against the loss covered by Part B of this policy, the company shall not be liable under this policy for a greater portion of such loss as the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to temporary substitute automobile or non-owned automobile shall be in excess over any other valid and collectible insurance.
Given that defendant's clause is a pro-rata clause, *214 the loss would be prorated according to the parties' respective policy limits. Plaintiff's limit is $300,000 and defendant's is $250,000.
In disputes between a pro-rata and an excess clause involving two or more insurance policies covering the same insured against the same risk, two rules have evolved. Under the minority rule, both clauses are declared repugnant and are rejected in total. Once the clauses are disregarded, each insurer's liability is prorated according to the proportion of the combined policy limits represented by the limits of each insurer's policy. The rationale underpinning this approach is to avoid the intractable conflict of deciding which insurance policy is primary and which is secondary by splitting the difference. Farm Bureau Mutual Ins Co v Horace Mann Ins Co, 131 Mich App 98; 345 NW2d 655 (1983) (conflict between an escape clause and a pro-rata clause); Mary Free Bed Hosp & Rehabilitation Center v Ins Co of North America, 131 Mich App 105; 345 NW2d 658 (1983) (conflicting excess clauses).[2]
In contrast, the majority rule seeks to reconcile the competing provisions by discerning the parties' intent by analyzing the clauses. St Paul Fire & Marine Ins Co v American Home Assurance Co, 197 Mich App 521; 495 NW2d 814 (1992). If one policy contains an excess clause while another has a pro-rata clause, the policy containing the pro-rata clause is deemed primary.
In light of the fact that the trial court did not reach this issue, we need not decide whether to adopt the minority or the majority rule in determining *215 the effect of the parties' other insurance clauses in this case. Detroit v DSS, supra.
First, we note that in three recent cases, different panels of this Court have ostensibly generated a conflict in deciding which rule to apply to resolve conflicts between other insurance clauses. In Nat'l Indemnity Co v Budget Rent A Car Systems, Inc, 195 Mich App 186, 188-190; 489 NW2d 175 (1992), the panel, in deciding which rule to apply to resolve a conflict between competing other insurance clauses containing excess provisions involving several no-fault automobile insurance policies, adopted the minority rule. See also Admiral Ins Co v Columbia Casualty Ins Co, 194 Mich App 300, 316; 486 NW2d 351 (1992), where the panel wrote approvingly of the minority rule, but decided that the rule did not apply because there was no conflict between the two policies in question.
In St Paul Fire & Marine v American Home, supra, the panel considered the legal effect of other insurance provisions contained in three professional malpractice insurance policies and adopted the majority rule. After that decision, in Secura Ins Co v Cincinnati Ins Co, 198 Mich App 243; 497 NW2d 230 (1993), a case arising from an accident involving an all-terrain vehicle, the panel applied the minority rule in determining the parties' liability to a mutual insured pursuant to their respective homeowner's insurance policies. Insofar as Nat'l Indemnity is the only one of these cases that involves no-fault insurance, it is therefore arguable which rule ought to be applied to the present case where the conflict is between an excess clause and a pro-rata clause.
Moreover, the parties have not had the benefit of these cases in presenting this matter on appeal. Our refusal to decide this issue will enable them to brief the matter fully, particularly with regard to *216 determining which rule is most applicable to this case.
In addition to an arguable question of law, we note that the record is also factually insufficient because the issue regarding competing other insurance clauses arises only if defendant's policy is triggered. At this stage of the inquiry, the issue concerning defendant's liability involves an unresolved issue of material fact. But even if the trier of fact determines that defendant has liability for the loss, it might not matter which rule is selected if the parties bear an equal burden of the loss, i.e., if the instrumentalities involved in the accident were linked to serve the unitary purpose of unloading harvested corn so that their degree of responsibility was equal. Under such circumstances, the result would arguably be the same under either rule. As a minimum, the parties must be given the opportunity to argue the issue at the appropriate stage of the proceedings in the trial court. For these reasons, we decline to decide the issue at this time.
VII
Notwithstanding the existence of a genuine issue of material fact whether defendant's policy affords coverage because the truck played a causal role in the accident, the question is presented whether plaintiff has standing to assert a cause of action against defendant under the theories of contribution, equitable subrogation, or indemnification.
It has long been recognized that the doctrine and right of contribution is based upon the principles of equity and natural justice. Caldwell v Fox, 394 Mich 401, 417; 231 NW2d 46 (1975). In Caldwell, p 417, the Court, quoting from Lorimer v *217 Julius Knack Coal Co, 246 Mich 214, 217; 224 NW 362 (1929), stated:
"It has often been stated by the courts that contribution is founded on principles of equity and natural justice. The doctrine rests on the principle that when parties stand in aequali jure, the law requires equality, which is equity, and one of the parties will not be obliged to bear more than his just share of a common burden or obligation to the advantage of his co-obligors. It is applied in those cases where one or more of several parties equally obligated have done more than their share in performing a common obligation. `And one who has paid more than his share of the joint obligation may recover contribution from his cocontractors.'" [Citations omitted.]
Furthermore, in Hastings Mutual Ins Co v State Farm Ins Co, 177 Mich App 428, 436; 442 NW2d 684 (1989), this Court stated:
The common law has held that absent a specific statute or policy provision, when several insurers are each liable for a loss, the insurer who pays is entitled to partial recoupment from the coinsurers on a pro rata basis. Couch on Insurance 2d (Revised ed), § 62:2. The purpose of this rule is to equalize the burden and thus achieve equity.
Quoting from 44 Am Jur 2d, Insurance, § 1792, pp 780-781, this Court added:
"Where several insurers bind themselves to pay the entire loss in case of the destruction of the subject of the insurance, and one insurer pays the whole loss, the one so paying has a right of action against its coinsurers for a ratable proportion of the amount paid by it, because it has paid a debt which is equally and concurrently due by the other insurers. The purpose of this rule is to *218 equalize the common burden by allowing reimbursement to the insurer paying the loss, for the excess paid over its share of the debt." [Hastings Mutual, supra, pp 436-437.]
Along with the common-law right of contribution, the right of contribution among nonintentional joint tortfeasors also exists by statute. MCL 600.2925a et seq.; MSA 27A.2925(1) et seq. See Moyses v Spartan Asphalt Paving Co, 383 Mich 314, 329, 334; 174 NW2d 797 (1970), where the Court abolished the common-law bar to contribution among nonintentional joint tortfeasors. O'Dowd v General Motors Corp, 419 Mich 597, 603; 358 NW2d 553 (1984). See MCL 600.2925b; MSA 27A.2925(2), where liability between joint tortfeasors is made apportionable on a pro-rata basis considering relative degrees of fault.
The right of contribution based upon common law and statute is separate and distinct from the doctrine of equitable subrogation. In Commercial Union Ins Co v Medical Protective Co, 426 Mich 109, 117; 393 NW2d 479 (1986), the Supreme Court, citing Smith v Sprague, 244 Mich 577, 579-580; 222 NW 207 (1928), stated:
Equitable subrogation is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other. It is well-established that the subrogee acquires no greater rights than those possessed by the subrogor, and that the subrogee may not be a "mere volunteer."
A separate suit between insurers for indemnification may also be brought if one insurance company pays a judgment against an insured who was a common insured. See Farmers Ins Group v Progressive *219 Casualty Ins Co, 84 Mich App 474, 484; 269 NW2d 647 (1978), where this Court recognized that an action for indemnification was proper between insurers where the plaintiff insurer defended the underlying tort case and settled the lawsuit and the defendant insurer refused to defend and denied insurance coverage, "since the injured person recovers for his injuries without delay while the insurers thereafter iron out their respective liabilities."
In analyzing this issue, we note that had the combine and truck been owned by separate owners, the plaintiff in the underlying wrongful death action could have joined them as defendants in the underlying tort action. As potential nonintentional joint tortfeasors, the separate owners of the combine and the truck would have had a statutorily based right to contribution for any loss arising out of the settlement of the underlying case.
In the instant case, the combine and the truck are owned by the same person, but are covered by policies issued by different insurers. Although plaintiff insurer defended the mutual insured and settled the underlying suit, the issue whether defendant insurer was liable for the loss was never addressed in the underlying action. As the parties acknowledge, the underlying tort action contained no allegations of negligence against Campbell regarding his ownership or operation of the pickup truck.
Nevertheless, the choice of the plaintiff in the underlying action to advance a particular theory of liability does not affect the plaintiff insurer's common-law right to contribution where there exists a genuine issue of material fact concerning the parties' common liability. See Caldwell, supra, p 420, which held that the plaintiff's caprice in choosing to join the third-party defendants was not *220 determinative of the third-party plaintiffs' right to contribution if a jury might reasonably find that all the defendants owed a common liability to the plaintiff. Moreover, we note that the plaintiff insurer in the instant case could not have sued the defendant insurer in the underlying case because the plaintiff insurer was not a party to that case. The issue in the underlying tort suit was simply whether Campbell was liable for the loss, not whether the defendant insurer had liability arising from the accident because of the role of the truck.
Contrary to defendant's argument, plaintiff's common-law right to contribution is available as long as there are two or more insurance policies covering a particular loss or liability. 8A Appleman, Insurance Law & Practice, § 4921, pp 516-517. Even though the two policies in question cover different vehicles involved in the accident, it is a genuine issue of material fact whether the parties to this suit owed a common liability to the plaintiff in the principal case because their respective policies covered the risk created when their mutual insured positioned the combine in the road in order to convey harvested corn to the pickup truck. Thus, plaintiff may establish a right to contribution if the trier of fact concludes that policies issued by plaintiff and defendant insurers afford coverage for the loss sustained by Rondo.
Moreover, plaintiff insurer also may assert a claim against defendant insurer based upon equitable subrogation. Contrary to defendant's assertion, equitable subrogation does not depend upon contract. Having settled the underlying tort action, plaintiff discharged Campbell's total liability, although it may have paid more than its share of the common liability. As the insurer of the combine, plaintiff was no mere volunteer because it had a legal obligation to Campbell pursuant to its *221 insurance policy covering the combine. By stepping into the shoes of its insured, plaintiff thus acquired all the rights possessed by Campbell under the doctrine of equitable subrogation.
In addition to a common-law right of contribution based in equity and a claim based upon the doctrine of equitable subrogation, plaintiff also has a statutorily authorized right of contribution. Under MCL 600.2925a(6); MSA 27A.2925(1)(6):
A liability insurer, who by payment has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full its obligation as insurer, is subrogated to the tort-feasor's right of contribution to the extent of the amount it has paid in excess of the tort-feasor's pro rata share of the common liability. It may assert this right either in its own name or in the name of its insured. This provision does not limit or impair any right of subrogation arising from any other relationship.
Plaintiff's statutory right of contribution arises from its claim of equitable subrogation for having paid an excess share of the common liability arising from the accident.
In addition, plaintiff may assert a separate claim for indemnification. By having paid the settlement in the underlying tort action, plaintiff insurer became subrogated to the rights that Campbell had under his policy with defendant insurance company.
Under each of these theories, plaintiff thus has a cause of action against defendant to recover the sums that should have been paid by defendant in the underlying lawsuit.
VIII
Accordingly, we vacate the trial court's grant of *222 summary disposition in favor of defendant and remand for further proceedings to determine whether defendant's insurance policy afforded coverage for the loss sustained by the decedent for which damages were awarded in the underlying wrongful death action. If the trier of fact concludes that defendant has a coverage obligation, then the trier of fact must also determine the degree to which the truck was at fault in causing the accident as well as the amount that defendant insurer must reimburse plaintiff for the costs of defense and settlement arising from the underlying wrongful death action.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] We note that unlike Thornton, which involved a claim of no-fault first-party personal injury benefits arising out of the "use of a motor vehicle as a motor vehicle" pursuant to MCL 500.3105(1); MSA 24.13105(1), the case at bar involves residual tort liability for injuries arising from the "ownership, maintenance, or use of a motor vehicle" under MCL 500.3135(1); MSA 24.13135(1) of the no-fault act. Although the Court in Thornton observed that the additional phrase "as a motor vehicle" in § 3105(1) constituted a "significant difference," this does not affect the application of the Kangas causation rule to no-fault actions, arising under § 3135(1). See also Marzonie v Auto Club Ins Ass'n, 441 Mich 522; 495 NW2d 788 (1992).
[2] Both cases were decided by the same panel on the same day, and did not involve no-fault insurance. See Federal Kemper Ins Co, Inc v Health Ins Administration, Inc, 424 Mich 537, 543, n 5; 383 NW2d 590 (1986), where the Court discussed the different approaches but expressed "no opinion as to the correctness of these decisions" because neither involved no-fault insurance.